2002-NMCA-091

52 P.3d 987

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Scott SOUTHWORTH, Defendant–Appellant.**

No. 21,957.

Court of Appeals of New Mexico.

June 28, 2002.

Certiorari Denied, No. 27,603, Aug. 12, 2002.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Scott Southworth (Defendant) was convicted of aggravated battery and criminal trespass. Defendant argues first that the trial court erred in its attempt to clarify self-defense instruction UJI 14–5190 NMRA 2002 regarding whether a trespasser is entitled to stand his ground. Next, Defendant argues that the trial court erred in admitting the prior inconsistent statement he made during a custodial interrogation after he invoked his right to counsel. Finally, Defendant argues that the trial court abused its discretion in rejecting a proposed plea agreement and that the prosecutor acted in bad faith by prosecuting crimes that would have been dismissed pursuant to the plea agreement.

{2} We reverse on the first issue and affirm on the remaining two issues.

## FACTUAL BACKGROUND

{3} At approximately 10:00 p.m. on December 18, 1999, Defendant drove onto Rosemary Chase's property. Defendant and Chase had previously been involved in a romantic relationship and it was disputed whether Defendant or Chase was trying to end it. Chase did not have a working vehicle or telephone and earlier in the day she had asked Defendant to come over to fix her truck.

{4} Chase testified that she had been watching out the window when Defendant arrived. Defendant had been drinking and Chase was afraid of him. She came out of her house with a shotgun, yelled for Defendant to leave, and fired a shot over Defendant's head. Defendant testified that Chase shot before yelling. Defendant began to walk forward slowly; it is disputed whether Chase fired another shot at that time or during the subsequent struggle for the gun. Defendant rushed forward, tackled Chase,

and took the gun from her. Chase testified that Defendant beat her with the gun and stuck it in her mouth. Defendant maintained that Chase was injured in the struggle for the gun. Defendant threw the gun into the yard and came into the house with Chase.

{5} Defendant spent the night and it is disputed whether Defendant raped Chase the next morning or they had consensual sex. Defendant and Chase stayed together most of the day, but Chase contended that she stayed because Defendant refused to let her leave. The following day, Chase began to collapse and went to a hospital for treatment of her injuries. She told the police that Defendant had beaten her, raped her, and held her against her will in both her home and in his. Defendant was charged with aggravated battery, criminal trespass, criminal sexual penetration (CSP) and false imprisonment.

{6} After a jury trial, Defendant was acquitted of false imprisonment and CSP and convicted of aggravated battery and criminal trespass. Defendant appeals his aggravated battery conviction.

## DISCUSSION

**ISSUE 1: The Court's Attempt to Clarify Self–Defense Instruction UJI 14–5190**

### A. Background

{7} The jury was given instructions based upon Defendant's claim of self-defense. In compliance with the language of UJI 14–5181 NMRA 2002, it was instructed that:

> Evidence has been presented that the defendant acted in self defense.

The defendant acted in self defense if:

1. There was an appearance of immediate danger of bodily harm to the defendant as a result of Rosemary Chase pointing, and shooting, a gun in his direction; and

2. The defendant was in fact put in fear of immediate bodily harm and struck Rosemary Chase because of that fear; and

3. The defendant used an amount of force that the defendant believed was

reasonable and necessary to prevent the bodily harm; and

4. The apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.

The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self defense. If you have a reasonable doubt as to whether the defendant acted in self defense, you must find the defendant not guilty.

The jury was also instructed that: "A person who is threatened with an attack need not retreat. In the exercise of his right of self defense, he may stand his ground and defend himself." *See* UJI 14–5190.

{8} During deliberations, the jury asked whether a person who is trespassing may be legally entitled to stand his ground for purposes of self-defense. The court issued the following clarifying statement: "[I]f you find that the Defendant was told by Rosemary Chase to leave her property and was given a reasonable time to start leaving, then the Defendant may not 'stand his ground,' otherwise he may." The court recognized there was uncertainty regarding whether its answer was proper but issued the statement over Defendant's objection.

{9} Defendant moved for a new trial asserting that he was entitled to stand his ground, even though trespassing, if faced with deadly force because a property owner cannot use deadly force to protect property, and that the State failed to meet its burden to prove that Defendant did not act in self-defense. The State countered with Chase's testimony that she feared Defendant and that she was defending against a potential assailant, not a trespasser. The State argued that the jury had been properly charged with determining whether Defendant's use of force was justified and maintained that the jury's verdict reflected a determination that Defendant was not so justified because he presented a threat to the victim. The court acknowledged that it knew of no New Mexico cases dispositively addressing the interplay between trespass and self-defense, but refused to set the verdict aside based upon a potentially improper instruction.

### B. Standard of Review

{10} Whether jury instructions are proper is subject to de novo appeal, "because it is closer to a determination of law than a determination of fact." *State v. Lucero*, 1998–NMSC–044, ¶ 5, 126 N.M. 552, 972 P.2d 1143. When a defendant presents evidence of self-defense, the "jury instructions must inform, 'in no uncertain terms,' that the State bears the burden of disproving self-defense." *State v. Foxen*, 2001–NMCA–061, ¶¶ 9–10, 130 N.M. 670, 29 P.3d 1071; *see State v. Acosta*, 1997–NMCA–035, ¶ 18, 123 N.M. 273, 939 P.2d 1081 (holding that elements instruction must include unlawfulness once the issue of self-defense arises).

### C. The Interplay Between Trespass and Self–Defense

{11} The impact of trespass on the right to self-defense is an issue of first impression in New Mexico. As reflected in UJI 14–5190, an individual normally has an unqualified right to stand his ground against attack. However, a person defending his or her home from unwanted entry is allowed great, but not unlimited, leeway in using force-even as an initial aggressor-to prevent intrusion. This case requires us to coordinate and balance these competing interests.

{12} The jury instructions given at trial were inadequate for a number of reasons. First, they simply failed to address the victim's and defendant's competing interests noted above. Second, the trial court's clarifying instruction which predicated Defendant's right to stand his ground on whether he was given a reasonable opportunity to leave, could have been interpreted by the jury as requiring Defendant to retreat even in the face of unlawful deadly force. Third, taken as a whole, the instructions were erroneous because they did not impose on the State the burden of proving that Defendant did not have a right to self-defense. *State v. Sosa*, 1997–NMSC–032, ¶ 26, 123 N.M. 564, 943 P.2d 1017 (noting that when a defendant claims his conduct was lawful self-defense, the prosecution bears the burden of proving

unlawfulness beyond a reasonable doubt). The court's instructions did not set out the State's burden to prove that Chase's actions were lawful, and thus, that Defendant's response was unlawful.

{13} We determine that an additional jury instruction is needed to properly delineate the circumstances under which a trespasser has a right to stand his ground. A recent Colorado case addressed a similar issue, and its analysis suggests that the proper way to integrate self-defense and trespass is to give two self-defense instructions-one for the defendant and one for the alleged victim. The Colorado Supreme Court, in *People v. Toler*, 9 P.3d 341 (Colo.2000) (en banc), held that a trespasser need not necessarily retreat to a position of no escape before he can use physical force self-defense, but he must retreat and cannot defend himself against any lawful or justified force exhibited by the owner or occupant. In *Toler*, the defendant was charged with murder when he shot the victim, allegedly in self-defense, while the defendant was trespassing on a third person's property. The trial court's jury instruction on self-defense included the phrase, "if the Defendant was ... where he had a right to be, he was not required to retreat to a position of no escape in order to claim the right to employ force in his own defense." *Id.* at 346.

{14} The Colorado Supreme Court determined that this instruction was improper because it might have led the jury to believe that, because the defendant was a trespasser, he could only resort to physical force in self-defense if he demonstrated that he first retreated to a position of no escape. *Id.* at 346–347. Instead, the court held, trespassers have the right to self-defense "without having to 'retreat to the wall' " if an owner or occupant of property confronts the trespasser with unlawful force. *Id.* at 352 (citations omitted). However, the court also noted that an owner or occupant can lawfully use "reasonable force," including deadly force, in some instances against trespassers and any "trespasser who is subjected to *lawful* physical force by the owner or occupant" has no privilege to use physical force in self-defense because the privilege of self-defense only ap-

plies "when the defendant faces. *unlawful* force." *Id.* at 353.

### D. Jury Instruction Predicating Defendant's Right to Self–Defense on Whether Chase Was Entitled to Use Potentially Deadly Force Against Defendant

{15} Using the reasoning of the Colorado court, we conclude two jury instructions are needed. First, the jury must decide whether Chase was entitled to use potentially deadly force against Defendant because, if Chase was justified in using potentially deadly force against Defendant, he had no right to stand his ground. If she was not justified, Defendant had a right to stand his ground and use reasonable force in self-defense even though he was trespassing. Second, if Defendant had the right to stand his ground, the jury must decide whether the State has proven that Defendant did not act in self-defense.

{16} We note that the altercation between Chase and Defendant occurred at Chase's home and we believe that this is a relevant factor in determining whether Chase's actions were lawful. Prior case law and the uniform jury instructions on defense of habitat suggest that Chase was entitled to use deadly force if she had a reasonable fear that Defendant intended to commit a felony in her home and if a reasonable person would have used such force. *See* UJI 14–5170 NMRA 2002 (instructing that killing in an attempt to prevent a felony in the defendant's home is justified if "[a] reasonable person in the same circumstances as the defendant would have acted as the defendant did."); *State v. Couch*, 52 N.M. 127, 137, 193 P.2d 405, 411 (1946) (explaining that although one cannot use deadly force to defend one's property from a mere trespass, in terms of habitation, the owner can use deadly force to prevent a "felonious aggression."); *State v. Niewiadowski*, 120 N.M. 361, 366, 901 P.2d 779, 784 (Ct.App.1995) (suggesting in dicta that prevention of armed robbery or aggravated assault would be enough to justify use of deadly force). Based upon the foregoing, we hold that the jury may consider the fact that the altercation occurred outside of

Chase's home, on her property, in evaluating the lawfulness of Chase's use of force.

{17} It is undisputed that Chase fired at least one gun shot in Defendant's direction. If she was not justified in doing so, it would be an aggravated assault. NMSA 1978, § 30–3–2(A) (1963) (aggravated assault consists of unlawfully assaulting another with a deadly weapon); *State v. Abeyta*, 120 N.M. 233, 242, 901 P.2d 164, 173 (1995) ("shooting at someone with a rifle, if not justified as perfect self-defense, would be a felony assault") (emphasis omitted).

{18} Before the jury could determine whether Defendant was entitled to stand his ground and whether he was justified in defending himself, the jury had to determine whether Chase was justified in using potentially deadly force against Defendant because such force was reasonable in relation to the threat presented by Defendant. *See Abeyta*, 120 N.M. at 241, 901 P.2d at 172 (use of force beyond what is reasonable in relation to the threat renders the entire action unlawful).

{19} The jury was never clearly instructed to make a determination as to whether Chase used lawful force and, therefore, the case must be remanded so that the jury can be properly instructed to make that determination. The trial court should instruct the jury that Defendant had the right to stand his ground and did not need to retreat unless he was threatened with lawful force. In order to determine whether the force used by Chase was lawful, the jury must conclude that Chase acted reasonably in defending her home against the perceived threat of the commission of a felony (similar to the elements of defense of habitation set for in UJI 14–5170). Both the elements instruction and the self-defense instruction must set out the State's burden of proving that the Defendant did not act in self-defense.

{20} We note that it appears to be undisputed that Chase was at her home when the altercation occurred, and thus, that the jury need only be instructed on defense of habitation. However, if there is an issue about this fact, then the trial court should instruct the jury to determine whether the place in question was Chase's home. *See* UJI 14–5170 committee comment (noting "[i]f the property being defended is not the defendant's habitation, he may kill the intruder only if the interference with the property is accompanied by a threat of death or great bodily harm." (citation omitted)). If the jury concludes that it was her home, then the jury should consider whether Chase acted reasonably in defense of her home, as discussed above. On the other hand, if the jury concludes that the incident occurred at a place other than Chase's home, then the jury must consider whether Chase's actions were justified under an alternative theory-whether Chase acted reasonably in defending herself against the perceived threat of immediate death or serious bodily harm. *See* UJI 14–5181 (establishing the elements of self-defense); *State v. Branchal*, 101 N.M. 498, 503, 684 P.2d 1163, 1168 (App.1984) (determining defendant was entitled to a self-defense instruction when there was evidence that the victim advanced in a threatening way, the defendant was frightened, and there was evidence of the victim's prior violent behavior which bore on the reasonableness of the defendant's apprehension).

**ISSUE 2: Admission of Defendant's Prior Inconsistent Statement**

{21} Even though our resolution of the first issue mandates reversal and a new trial, we address this issue for purposes of retrial.

**A. Factual Background.**

{22} After Defendant was arrested, he refused to give a statement to the police and asked for an attorney. The next day, before Defendant consulted with his attorney, Officer Arthur brought Defendant out of his cell, re-Mirandized him, and questioned him. Officer Arthur never asked Defendant whether Defendant had previously requested an attorney and Defendant did not volunteer that information. In speaking with Officer Arthur, Defendant denied "everything" including his presence at Chase's house on the night she was injured.

{23} After the defense presented its case at trial and Defendant testified as to his version of the underlying events, including

his claim of self-defense, the State called Officer Arthur in rebuttal to testify regarding Defendant's statement denying any involvement in Chase's injuries. Defendant objected, but the court allowed the testimony because Defendant had been informed of, and waived, his *Miranda* rights before he spoke with Officer Arthur, and Officer Arthur did not know that Defendant had requested an attorney. The court gave Defendant an opportunity to cross-examine Officer Arthur and to offer surrebuttal, but, after limited cross, Defendant stated he had nothing to add.

{24} At the hearing on his motion for a new trial, Defendant maintained that Officer Arthur's testimony should not have been admitted because Defendant had not initiated the conversation with Officer Arthur and because Defendant made the statement in response to questioning that took place after Defendant had invoked his right to counsel. The State contended that the testimony was admissible for impeachment purposes, and Defendant countered that the statement was used for more than impeachment because the State used it in its closing argument and used it to imply that Defendant fabricated his entire trial testimony.

{25} The court determined that the evidence was admissible based on Officer Arthur's ignorance of Defendant's request for an attorney, the fact that Officer Arthur re-Mirandized Defendant, and that Defendant made a knowing and intelligent waiver of his right to remain silent when he spoke willingly.

{26} Defendant now concedes that the statement would be admissible for impeachment purposes, but maintains that the State used the testimony as character evidence, not for impeachment. Defendant also contends that the State failed to lay the proper foundation to use the statement for impeachment because it did not cross-examine Defendant on the statement before introducing Officer Arthur's rebuttal testimony.

{27} The State argues lack of preservation because Defendant never objected to the introduction of the evidence on the grounds that it was used as character evidence instead of impeachment. The State also contends that Defendant never objected to the State's failure to lay the proper foundation for impeachment.

## B. Standard of Review

■ {28} "Abuse of discretion is the standard of review on appeal of a trial court's ruling admitting a prior inconsistent statement pursuant to Rule 11–613." *State v. Gomez*, 2001–NMCA–080, ¶ 12, 131 N.M. 118, 33 P.3d 669.

## C. Admissibility of Statement for Impeachment Purposes

■ {29} Statements made by a defendant after he requests an attorney must be excluded from the State's case-in-chief unless the State can show that the defendant initiated the conversation. *See Michigan v. Jackson*, 475 U.S. 625, 636, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *State v. Young*, 117 N.M. 688, 694, 875 P.2d 1119, 1125 (Ct.App. 1994). Both parties concede, however, that such statements may be used for impeachment purposes. *See Michigan v. Harvey*, 494 U.S. 344, 345–46, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (permitting statement by a defendant secured pursuant to a police-initiated conversation otherwise inadmissible under *Jackson* to be used to impeach a defendant's false or inconsistent testimony).

### 1. Use of Statement to Prove Character

■ {30} Defendant contends that the State attempted to introduce the statement through Officer Arthur's testimony as substantive evidence to show Defendant's general lack of truthfulness or character, not just for impeachment. Defendant minimally preserved this issue by arguing below that the State used the statement to imply that Defendant fabricated his entire trial testimony. However, the record contains no evidence suggesting that the State sought to use the earlier inconsistent statement as substantive evidence, and because Defendant cites no case law to support this contention, it can be summarily rejected. *See State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) ("When a criminal conviction is being challenged, counsel should properly present this

court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice. . . ."); *State v. Isiah* 109 N.M. 21, 25, 781 P.2d 293, 297 (1989) (holding that issue raised in appellate brief but not supported by cited authority will not be reviewed on appeal).

### 2. Lack of Foundation

{31} Defendant argues that, if the statement was to be used as impeachment, the State failed to lay a proper foundation because Defendant was not confronted with the inconsistent statement on cross-examination before Officer Arthur was allowed to testify. Defendant did not raise this objection at trial or in his motion for a new trial. Because this issue was not preserved, it will only be considered as a basis for reversal on appeal if it amounts to fundamental or plain error. *See State v. Traeger,* 2001–NMSC–022, ¶ 18, 130 N.M. 618, 29 P.3d 518 (stating that doctrine of fundamental error allows appellate court to review criminal conviction for errors undermining the integrity of the judicial process); *State v. Paiz,* 1999–NMCA–104, ¶ 28, 127 N.M. 776, 987 P.2d 1163 (explaining that plain error doctrine is used sparingly when evidentiary error affects the fairness, integrity, or public reputation of judicial proceedings). For the reasons that follow, we find no error and, therefore, no fundamental or plain error.

{32} Although the traditional rule is that a witness must be confronted with an inconsistent statement on cross examination, this Court recognized in *Gomez* that the rule has been relaxed at both the federal and state level " 'in favor of simply providing [the witness] an opportunity to explain and the opposite party an opportunity to examine the witness on the statement, with no specification of any particular time or sequence.' " *Gomez,* 2001–NMCA–080, ¶ 14, 131 N.M. 118, 33 P.3d 669, *quoting* Fed.R.Evid. 613(b), Advisory Committee Notes. In *Gomez,* this Court noted that the federal rule, identical to Rule 11–613(B) NMRA 2002, permits departure from the traditional, even though often preferred, "method of confronting a witness with his inconsistent statement prior to its introduction [as] evidence." *Id.* The only

remaining requirements are that the witness be given an opportunity to explain or deny the statement and the opposing party be given an opportunity to examine the witness on the statement. *Gomez,* 2001–NMCA–080, ¶ 14, 131 N.M. 118, 33 P.3d 669.

{33} The court complied with the requirements of Rule 11–613(B) as interpreted by *Gomez* because Defendant was given an opportunity to cross examine Officer Arthur on the statement made to him and was offered the opportunity for surrebuttal to explain his prior inconsistent statement, even though he chose not to do so.

{34} Furthermore, inconsistent statements of a party opponent such as Defendant are admissible pursuant to Rule 11–801(D)(2)(a) NMRA 2002 which omits the rebuttal language found in Rule 11–613(B). The very language of Rule 11–613(B) specifically excludes from its requirements "admissions of a party-opponent as defined in Subparagraph (2) of Paragraph D of Rule 11–801." *See* 28 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6205 (1993) ("[I]t is clear from the face of Rule 613(b) that admissions of a party opponent . . . are also exempt from foundation requirements [because] . . . parties have ample opportunities to testify and explain or deny statements attributed to them.").

{35} Rule 11–613(B) no longer requires that a witness be cross-examined on his inconsistent statements before the statements are admitted. Rule 11–801(D)(2) does not require any opportunity to rebut when the inconsistent statements are those of a party witness. Therefore, admission without proper "foundation" was not error, fundamental or otherwise.

### ISSUE 3: The Proposed Plea Bargain and the Prosecution of Crimes Subject to Dismissal in the Proposed Plea Agreement

{36} Although we reverse on Issue 1, we reach this issue because reversal on Issue 3 would obviate the need for retrial.

### A. Factual Background

{37} On the first day of trial, the State informed the court that the parties had reached a plea and disposition agreement

whereby Defendant agreed to plead no contest to criminal trespass, a misdemeanor, and public affray, a petty misdemeanor. In return, the State proposed to dismiss felony charges of aggravated battery, criminal sexual penetration and false imprisonment. The State's offer was made in light of evidence obtained the previous weekend suggesting credibility problems on both sides. The State was concerned that, if the trial went forward, Defendant might be acquitted or convicted on all charges, and neither result would be in the interests of justice.

{38} The court noted its "two-week rule," requiring parties to notify the court of any pleas two weeks before trial to avoid the expense and inconvenience of convening a jury and calling witnesses, and invited both parties to show good cause why the two week deadline should not be enforced. The parties provided reasons, such as lack of productivity by Defendant's investigator and the unavailability of witnesses, to explain why new evidence was discovered only three days before trial.

{39} The court noted that under the plea Defendant would be exposed to a potential sentence of eighteen months while the potential exposure for the crimes in the original charge was twenty-four years. When asked by the court, Defendant said he did nothing wrong but was willing to plead no contest because he realized he could be convicted and, though he believed he had a defense, he wanted to avoid exposure to twenty-three years of imprisonment. The court then spoke with Chase. She stated that she had been afraid of Defendant, that she confronted him with a gun due to her fear, and that she was prepared to testify that Defendant hit her and raped her. The court indicated its displeasure with the no contest plea because Defendant claimed he did nothing wrong while the victim claimed he did; "that is the reason we have jury trials—to sort out who did what."

{40} In rejecting the plea, the court determined that the discrepancies between the police report, Defendant's claims, and the victim's claims made it inappropriate for the court to accept the plea to misdemeanor and petty misdemeanor charges when Defendant was originally charged with a second degree felony and several other felonies. Furthermore, the court believed a no contest plea was inappropriate when Defendant denied any wrongdoing and the victim maintained that he had hit and raped her. Finally, the court noted that the case had been ongoing for seven months which was ample time to investigate and file an amended criminal information.

{41} The court allowed the State to file amended charges, but the record contains no further reference as to whether the State made any attempt to amend the charges. The trial went forward on the charges of aggravated battery, criminal trespass, false imprisonment and CSP.

## B. Standard of Review

{42} Rejection of the plea bargain and admission of evidence on all of the counts is reviewed for abuse of discretion. *See State v. Allen*, 2000–NMSC–002, ¶¶ 17, 95, 128 N.M. 482, 994 P.2d 728 (stating that evidentiary rulings and issue of prosecutorial misconduct are reviewed for abuse of discretion if raised at trial); *State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994) (granting trial court broad discretion to accept or reject a plea agreement).

## C. Rejection of the Plea Agreement

{43} Although Defendant characterizes the court's decision to reject the plea as based upon factors of timeliness, economics, and convenience-all factors addressed by the court's two-week rule-review of the taped record as set forth above shows that the court relied on many factors, including disparity between the potential sentences for the crimes charged and those contained in the plea, and marked discrepancies between Defendant's version of the facts and that of the complainant.

{44} In *State v. Holtry*, 97 N.M. 221, 224, 638 P.2d 433, 436 (Ct.App.1981), this Court held that a trial court may exercise its discretion and reject a plea based upon a number of factors, including leniency in sentencing and a defendant's lack of remorse. Although the trial court in *Holtry* provisionally accept-

ed the defendant's plea to involuntary manslaughter in exchange for an eighteen-month probation period and dismissal of a voluntary manslaughter charge, subject to reconsideration upon review of the forthcoming pre-sentence report, once the trial judge reviewed the pre-sentence report, he rejected the plea. *Id.* at 222, 638 P.2d at 434. The defendant contended that the court abused its discretion in refusing to accept the plea and disposition agreement. *Id.* at 223, 638 P.2d at 435. This Court noted that the trial judge rejected the plea bargain agreement for three reasons: (1) the defendant's involvement in a prior assault; (2) the defendant's disregard of a court order regarding child support; and, (3) the effect of the victim's death on the victim's family. *Id.* at 224, 638 P.2d at 436. The defendant's "attitude" was also a factor in *Holtry* because the pre-sentence report noted that the defendant exhibited an air of superiority and showed no remorse for the homicide. *Id.* Finally, the trial court believed that an incident which resulted in death deserved punishment greater than eighteen months of probation because "there are too many people doing 18 months' probated sentences for little or nothing and in this case a human life was taken." *Id.*

{45} In *Holtry,* this Court held that the trial court's reasons for rejecting the plea were within its discretion and affirmed the rejection of the plea agreement because, " '[a] decision that a plea bargain will result in the defendant's receiving too light a sentence under the circumstances of the case is a sound reason for a judge's refusing to accept the agreement.' " *Id.* (quoting *United States v. Bean,* 564 F.2d 700, 704 (5th Cir. 1977)); *see also United States v. Carrigan,* 778 F.2d 1454, 1464 (10th Cir.1985) (noting that under Federal Rule 11, rejection of plea is proper if dismissal of charges under the plea bargain would restrict the district court's ability to impose what it considered to be an appropriate sentence).

{46} Although Defendant contends that the trial court rejected the plea due to untimeliness, the record shows that the court rejected the plea for a number of other reasons. Therefore, we need not determine whether a trial court would abuse its discretion if it rejected a plea merely because the plea was entered after the expiration of a court-imposed deadline, and we hold that the court acted within its discretion in rejecting the proposed plea.

**D.  Prosecutorial Misconduct**

{47} Defendant claims that the State prosecuted charges it did not believe were sustainable, and that the State's failure to re-file misdemeanor-only charges amounted to misconduct.

{48} Prosecutorial discretion in charging is quite broad, limited only by the requirement that the State must show probable cause that the defendant committed a particular crime. *See State v. Ogden,* 118 N.M. 234, 240–41, 880 P.2d 845, 851–52 (1994). The court acknowledged sufficient probable cause by twice finding that the State had established a prima facie case on all of the crimes charged. First, in denying Defendant's motion for directed verdict at the end of the State's case in chief, the court specifically found that the State had made a prima facie case for criminal trespass, aggravated battery, criminal sexual penetration, and false imprisonment based largely on Chase's testimony. After the defense had presented its case, Defendant again moved for directed verdict and the court again denied the motion because it considered the issues to be unchanged and the verdict to be a matter of credibility, which is within the province of the jury. The jury's conviction of Defendant on the aggravated battery charge further supports a finding of probable cause.

{49} Defendant fails to recognize the distinction between a prosecutor who sees some weaknesses in his case and one who proceeds in bad faith. Because probable cause existed, the State was correct in presenting the evidence to the fact-finder and allowing it to "resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay." *State v. Roybal,* 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992).

{50} Defendant cites to the ABA Standard for Criminal Justice to support his assertion that it is unprofessional for a prosecutor to

bring charges in the absence of sufficient admissible evidence to convict. However, he has failed to make any showing of lack of sufficiency of the evidence, he did not appeal on sufficiency grounds, and he cites to no authority mandating that the prosecutor must amend the complaint merely because he or she begins to doubt the credibility of a witness.

{51} Moreover, Defendant provides no support for his assertion that the jury improperly heard evidence that served to prejudice it against Defendant because he has failed to make any showing of such prejudice. *See State v. Paul,* 83 N.M. 619, 621–622, 495 P.2d 797 (Ct.App.1972) (rejecting the defendant's contention that, when he was convicted of armed robbery and acquitted of attempted murder, the attempted murder charge received over-emphasis and poisoned the mind of the jury because the defendant failed to make an affirmative showing of prejudice). Finally, Defendant failed to preserve this argument because he failed to move for severance or to object to the evidence introduced at trial. *See State v. Jacobs,* 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127 (holding that when the defendant failed to object to joinder at trial, the issue was not preserved on appeal).

{52} These failures, coupled with the trial court's findings of sufficient evidence of the crimes charged, are sufficient to establish that the State was within its discretion in prosecuting Defendant once the court rejected the plea.

{53} Defendant makes a cursory citation to the Fourteenth Amendment to the United States Constitution and Art. II, Section 14 of the New Mexico Constitution in support of his assertion that he was denied the right to a fair trial, but he has provided no explanation as to how these constitutional provisions apply to the facts before the Court and has cited to no case law in support of his allegations that the "overcharging" by the prosecutor deprived Defendant of his right to a fair trial. Therefore, this argument need not be entertained. *See State v. Smith,* 92 N.M. 533, 537, 591 P.2d 664, 668 (1979) ("A general claim of denial of a fair trial cannot provide a basis for relief.").

{54} Finally, Defendant contends that it was jurisdictional error for the court to fail to direct the State to refile misdemeanor-only charges once the court rejected the plea bargain because an order forcing the State to refile would have given the State an "opportunity to select the appropriate jurisdiction" instead of "forcing" the case to be tried in district court. This contention is without merit and is rejected on a number of grounds. Again, Defendant cites no case law in support of his contention. Further, the record contains no evidence that the State was precluded from dismissing the charges and refiling the complaint should it have decided to do so. Lastly, the contention that the State would have elected to proceed in magistrate court is purely speculative because both the district court and the magistrate court possess original, concurrent jurisdiction over misdemeanor cases, and the prosecutor has discretion to choose the court in which to bring a misdemeanor criminal action. *See State v. Ahasteen,* 1998–NMCA–158, ¶ 22, 126 N.M. 238, 968 P.2d 328.

## CONCLUSION

{55} We reverse Defendant's conviction for aggravated battery and remand for proceedings consistent with this opinion.

{56} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.