This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: December 4, 2023**

**NO. S-1-SC-38585**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**IGNACIO GALINDO,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Bennett J. Baur, Chief Public Defender
Luz C. Valverde, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Walter M. Hart, III, Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**BACON, Chief Justice.**

**{1}** In this direct appeal, Defendant-Appellant Ignacio Galindo (Appellant) seeks reversal of the district court's denial of a self-defense jury instruction. Appellant claims that the evidence introduced at trial is sufficient to raise a reasonable doubt as to whether he acted in self-defense, thus warranting the relevant instruction. In denying the requested instruction, the district court pointed to acts by Appellant supporting that he was the first aggressor. A jury found Appellant guilty of first-degree murder contrary

to NMSA 1978, Section 30-2-1(A)(1) (1994), felony murder contrary to Section 30-2-1(A)(2), and eleven other charges.

{2}     Central to this issue is whether Appellant's firing of a gunshot through an open window constituted an objectively reasonable response to the actions of Kristen Rodriguez and Victim Daniel Martinez while they were inside Rodriguez's residence. Applying the defense-of-habitation doctrine, we conclude that Appellant's response was not objectively reasonable and accordingly affirm the district court's denial of the requested self-defense instruction.

## I.     BACKGROUND

{3}     Appellant and Rodriguez began a relationship in 2011 and had two children together but were living separately at the time of the relevant events, which occurred in Alamogordo on the night of August 16-17, 2018.

{4}     Appellant testified that earlier on August 16 he had learned of Rodriguez's relationship with Victim. Appellant admitted at trial that he sent multiple "angry" texts to Rodriguez during that day including "Found out ur fucking Daniel..hes dead tonight."[1] Rodriguez testified that she shared that text with Victim and that they discussed its content.

{5}     It is uncontested that, just before midnight at an Allsup's Convenience Store, Appellant and Victim encountered one another unexpectedly and exchanged antagonistic words, resulting in Victim striking Appellant in the face. Rodriguez testified that Victim told her about the encounter on the phone while driving back from the Allsup's and told her that he would not return right away because Appellant was following him. Rodriguez testified that she turned off the lights in her residence and hid by the couch until Victim returned.

{6}     Appellant testified to committing the following acts after driving to Rodriguez's residence soon after 1:00 a.m. In order to "disable" their vehicles and "just to be an ass," Appellant sprayed expanding foam into the tailpipe of Rodriguez's vehicle and onto the door handle of Victim's vehicle. Appellant then "knock[ed]" or "pound[ed]" on Rodriguez's front door, followed closely by Rodriguez "yelling for [Appellant] to leave . . . , basically screaming for [Appellant] to leave, [and that] the police [had been called]." Appellant testified that he "just wanted to hear from [Rodriguez's] own mouth that she was messing around again and we were done" and that he knew Victim was inside but "didn't really have anything to say to him." Appellant then moved around the residence to Rodriguez's master bedroom window and knocked thereon "to see if I could get her to come out." Appellant then went to the living room window near the front door where he broke and removed part of the accordion-style panel of the air

---

[1]Testifying on redirect and responding to a question about the meaning of this text, Appellant stated, "To be honest, I was just threatening [Victim] . . . just really to scare him." Appellant then clarified that he did not mean it literally and that his intent was not to confront and kill Victim.

conditioner in that window.2 During these events, Appellant and Rodriguez "were arguing," Rodriguez was "telling [Appellant] to leave," Appellant "was just yelling back at her that she needs to come outside and talk to [him]," and the two "were both screaming at each other."

{7}     Appellant testified that through the opening he had just caused in the window, he saw Rodriguez holding a handgun (Glock)3 and saw Victim take it from her and take a step toward the door, at which point Appellant "kinda backed up [behind the] brick wall" between the front door and the front window. Appellant testified that he "heard a 'pop' which sounded like a gunshot."4 Appellant then pulled out his gun and "didn't look into the window but . . . reached around and . . . shot through the window inside the apartment." Appellant testified that he "carr[ies] a firearm all the time," that he was unable to see through the curtain but "kinda panicked really when [he] heard the shot," and that he "didn't know whether they were shooting the gun at [him] and [so he] pulled out [his] gun and . . . shot back." Appellant testified that after firing the shot he left immediately in his truck, knowing that he had "fired inside the house . . . , but [he] did not know that anybody was hurt."

{8}     At the conference on jury instructions, the district court heard arguments regarding Appellant's tendered modification of UJI 14-5171 NMRA ("Justifiable homicide; self-defense."). Appellant's tendered instruction included,

> The killing is in self-defense if:
>
> 1. There was an appearance of immediate danger of death or great bodily harm to [Appellant] as a result of Kristen Rodriguez arming herself with a handgun and handing such gun to [Victim] who was heading toward the front door as [Appellant] was right outside such front door and [Appellant] heard what he believed to be a shot fired.

The State argued under *State v. Lucero*, 1998-NMSC-044, 126 N.M. 552, 972 P.2d 1143, that Appellant's actions—his threatening text, breaching the front window, and refusing to leave after being told to do so—established that he was the first aggressor and thus was not entitled to a self-defense instruction. *See id.* ¶¶ 6-9. Defense counsel argued that Appellant's testimony showed he was not the first aggressor because he arrived merely to talk and removed his holstered firearm only as a result of seeing Rodriguez and Victim's drawn weapon and then hearing a shot. The district court

---

2Additionally, Rodriguez testified and Appellant does not contest that "once [Appellant] broke the piece off the AC unit, he reached in and pulled the curtains over."

3Rodriguez testified that she took the Glock out of the hallway closet "[b]ecause somebody was trying to break into my house, someone that had text me a very disturbing text, and just everything I been through with him; I was scared, I was terrified, I was very terrified . . . [of Appellant]."

4The State argues that, apart from this testimony by Appellant, "there was no evidence any gun other than [Appellant's .380 handgun] had been fired that night." In response, Appellant points to "evidence at trial that while the Glock magazine held fifteen 9 mm rounds, only fourteen rounds were in the magazine once it was found."

denied the instruction in large part based on Appellant's threatening text and his "additional steps" after being told to leave.

{9}     A jury found Appellant guilty on all charges, and he was sentenced to life plus twenty years and six months, less three days. Appellant timely appealed to this Court, which has exclusive jurisdiction over "[a]ppeals from a judgment of the district court imposing a sentence of . . . life imprisonment." N.M. Const. art. VI, § 2.

## II.     DISCUSSION

{10}    On appeal, Appellant argues that the district court's denial of his tendered self-defense instruction "deprived the jury of its fact-finding function and violated [his] rights to due process, to present a defense and to a jury determination on every element of the offense."

### A.     The Issue Was Preserved

{11}    At the outset, we note the State's assertion that Appellant did not preserve this issue for appeal, as "[t]he self-defense instruction requested by [Appellant] . . . contained no limiting provisions relevant to [the] right of defense of habitation of Victim and [Rodriguez] and thus constituted an incorrect statement of the law." In response, Appellant argues that the court understood his position regarding self-defense and that defense of habitation was not raised below as a requirement to be included in the instruction.

{12}    On this point we agree with Appellant's citation of *Gallegos v. State*, in which this Court held that a flawed but minor modification of an otherwise correct uniform jury instruction was sufficient for preservation purposes where it "alert[ed] the mind of the court" to the challenged question of law. 1992-NMSC-014, ¶¶ 3-6, 113 N.M. 339, 825 P.2d 1249 (citing "SCRA 1986, 5-608(D)"□the 1975 amendment, identical to the current Rule 5-608(D) NMRA). The *Gallegos* Court concluded that the "'correct written instruction'" requirement of Rule 5-608(D) "must be read in light of the purpose of the Rule, which is to allow the court an opportunity to decide a question whose dimensions are not open to conjecture or after-the-fact interpretation." 1992-NMSC-014, ¶ 6. Applying *Gallegos* here, the record is clear that for preservation purposes, the mind of the district court was sufficiently alerted to Appellant's claim of error by the tendered self-defense instruction, and we do not address this issue further.

### B.     Standard of Review and the Law of Self-Defense

{13}    In *State v. Baroz*, this Court provided the following statements of law regarding the denial of a self-defense instruction:

> The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo. When, as in this case, a challenge to the jury instructions has been preserved, we review for reversible error. Failure to instruct on self-defense when there is a sufficient quantum of

proof to warrant it is reversible error. We do not weigh the evidence but rather determine whether there is sufficient evidence to raise a reasonable doubt about self-defense.

A defendant is only entitled to jury instructions on a self-defense theory if there is evidence presented to support every element of that theory. An instruction on self-defense requires evidence that (1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed. We have described the first two requirements as subjective in that they focus on the perception of the defendant at the time of the incident. In contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant.

Where there is enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense such that reasonable minds could differ, the instruction should be given. When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions.

2017-NMSC-030, ¶¶ 13-15, 404 P.3d 769 (text only)[5] (citations omitted). Regarding the objective, third required element of self-defense, "[t]he law simply does not recognize any right to an acquittal based on a wholly unreasonable claim of a self-defense justification for taking the life of another." *State v. Rudolfo,* 2008-NMSC-036, ¶ 20, 144 N.M. 305, 187 P.3d 170.

## C.     Under the Defense-of-Habitation Doctrine, Rodriguez's and Victim's Conduct Was Lawful and Thus Appellant's Responsive Use of Deadly Force Was Not Objectively Reasonable

{14}     Appellant argues that the relevant instruction was warranted because he presented sufficient evidence of each of the three elements of self-defense to raise a reasonable doubt thereof. First, regarding his subjective fear, Appellant points to his testimony that when "[l]ooking through the window, he saw [Rodriguez] pull the Glock, he then saw [Victim] reach for it and [in response Appellant] stepped back [behind the brick wall]. Hearing what he believed to be a shot, he panicked and pulled his gun from its holster." Second, regarding the killing resulting from his subjective fear, Appellant points to his testimony "that when he heard the shot, he panicked and fired through the [partially obscured] window."

---

[5]The "text only" parenthetical as used in this opinion indicates omission (for enhanced readability) of all of the following nontextual marks that may be present in the source text: brackets, ellipses, and internal quotation marks.

**{15}**    Third, regarding whether his use of deadly force was objectively reasonable, Appellant argues that "[t]here was sufficient evidence from which a properly instructed jury could have found [Appellant] acted reasonably when he fired his gun." He argues that his actions before Rodriguez armed herself—going "to the house to 'mess with'" Rodriguez, vandalizing the vehicles, and "bang[ing] on the windows yelling for [Rodriguez] to come out and talk with him"—did not rise "to the level of deadly force." Appellant points to "the defense evidence in support of the instruction"—seeing Rodriguez "pull the Glock," seeing Victim "take it from her and step toward the front door," and hearing a shot—as "sufficient to raise a reasonable doubt as to whether using deadly force was reasonable under the circumstances."

**{16}**    Based on the foregoing, Appellant argues that "it was for the jury to decide whether . . . his actions were reasonable under the circumstances" and that "the court's failure to instruct the jury on . . . in essence, the only contested question . . . violated [Appellant's] Sixth Amendment rights to present a defense."

**{17}**    In response, the State argues that the two subjective elements of self-defense are not sufficiently supported by Appellant's "mere belief [that] he heard a 'pop' that sounded like a shot." Without citing the record, the State further asserts that Appellant's "testimony reflected his own uncertainty as to [who] had fired the alleged shot, . . . did not [include] anyone having pointed the gun at him . . . [, and] indicate[d] that his action was fueled by reasons and emotions other than fear." However, these allegations do not demonstrate that Appellant lacked fear or that Appellant did not fire the fatal shot in response to that fear. We conclude that the evidence of Appellant's testimony was sufficient to support the two subjective elements of self-defense.

**{18}**    Regarding the objective third element, the State argues that no reasonable juror could have concluded under the defense-of-habitation doctrine that the conduct of Victim and Rodriguez to which Appellant testified was unlawful, and thus the State maintains that Appellant was not entitled to a self-defense instruction. The State argues, "Under the evidence presented, Victim and [Rodriguez] reasonably believed that [Appellant's] intention in pursuing an assault upon [Rodriguez's] residence was to commit a violent felony upon one or more occupants of that residence[, and therefore] even potentially deadly conduct on the[ir] part . . . was lawful as defense of habitation." The State quotes *State v. Boyette*, 2008-NMSC-030, ¶ 15, 144 N.M. 184, 185 P.3d 355, for the proposition that defense of habitation "'gives a person the right to use lethal force against an intruder when such force is necessary to prevent the commission of a felony in [that person's] home.'" *See also id.* ¶ 21 (clarifying that "the term 'felony' in the defense of habitation context is properly limited to those felonies involving violence"). The State also cites persuasive sources for the proposition that, relevant to Victim's status in Rodriguez's residence, the "right of defense of habitation extends to guests."

**{19}**    The State cites *State v. Southworth*, 2002-NMCA-091, 132 N.M. 615, 52 P.3d 987, as a case involving comparable circumstances that "addressed the role of the lawfulness of a victim's conduct in relation to a claim of self-defense." In *Southworth*, the victim came out of her house and fired a shotgun over the defendant's head in conjunction with yelling at him to leave her property. *Id.* ¶ 4. The defendant took the

shotgun from the victim, and the victim testified that the defendant then beat her with the weapon. *Id.* The two had previously been involved in a romantic relationship, and the victim testified that she was afraid of the defendant, who had been drinking prior to arriving. *Id.* ¶¶ 3-4. The defendant claimed self-defense predicated on a right to stand his ground but was convicted of aggravated battery and criminal trespass. *Id.* ¶¶ 6-9.

**{20}** The State points to *Southworth*'s proposition, *id.* ¶ 14, that the self-defense privilege only applies where a defendant's use of force is in response to *unlawful* force. The State quotes the *Southworth* Court's related conclusion, *id.* ¶ 15, that a separate jury instruction was required regarding "whether [the victim] 'was entitled to use potentially deadly force against [the defendant] because, if [the victim] was justified in using potentially deadly force against [the defendant], [the defendant] had no right to stand his ground.'"

**{21}** As discussed next, we agree with the State's reading of our defense-of-habitation precedent, approve the *Southworth* Court's application thereof to the lawfulness of the use of force by the owner or householder of a residence, and confirm that the lawfulness of such use of force extends as well to a guest.

**{22}** New Mexico caselaw is clear that an inhabitant of a dwelling is entitled to significant latitude in the use of force in defense of habitation. *Boyette*, 2008-NMSC-030, ¶¶ 17-21 ("[D]efense of habitation justifies killing an intruder who is assaulting the defendant's home with the intent of reaching its occupants and committing a felony against them . . . [and] allows one to kill to prevent an intruder's forced entry."); *State v. Couch*, 1946-NMSC-047, ¶¶ 28-30, 52 N.M. 127, 193 P.2d 405 (Defense-of-habitation doctrine "gives the householder the right to kill the aggressor, if such killing is necessary or apparently necessary to prevent or repel the felonious aggression . . . [and] gives the householder the right to meet force with force, [where] an attack upon a dwelling, and especially in the night, the law regards as equivalent to an assault on a . . . person." (internal quotation marks and citation omitted)); *State v. Bailey*, 1921-NMSC-009, ¶ 30, 27 N.M. 145, 198 P. 529 ("[I]f the assault upon the habitation is for the purpose of reaching and committing a felony upon the dweller therein, or [a family member], this justifies resistance to the extent of killing, if necessary to prevent the felony.").

**{23}** The *Southworth* Court correctly applied our precedent and the uniform jury instructions on defense of habitation in reaching the conclusion that a householder is "entitled to use deadly force" if the householder "ha[s] a reasonable fear" that a trespasser intends to commit a felony at that home "and if a reasonable person would have used such force."6 2002-NMCA-091, ¶ 16; *see* UJI 14-5170 NMRA (instructing that killing in an attempt to prevent a felony in the householder's home is justified if "[a] reasonable person in the same circumstances as the [householder] would have acted as the [householder] did"); *Couch*, 1946-NMSC-047, ¶ 28 ("[T]he law of defense of

---

6We note that, notwithstanding this conclusion, the relevant question in *Southworth* was properly submitted to the jury where facts essential to determining the lawfulness of a householder's use of deadly force were disputed. *See* 2002-NMCA-091, ¶¶ 15, 19. Here, in contrast, the facts necessary for determining the lawfulness of Rodriguez's and Victim's actions are uncontested or were provided by Appellant's own testimony.

habitation and the resistance to the commission of a felony thereon . . . gives the householder the right to kill the aggressor, if such killing is necessary or apparently necessary to prevent or repel the felonious aggression."). In addition, we recognize and approve the proposition that "[t]he defense-of-habitation privilege may be invoked by a servant or guest of the owner as well as by the owner." 1 Jens David Ohlin, *Wharton's Criminal Law* § 14:12 (16th ed. 2021).

**{24}** It follows logically that if a householder or a guest of the householder was entitled to use deadly force under such circumstances, the trespasser's use of deadly force in response to that lawful conduct cannot be objectively reasonable.

**{25}** Under uncontested evidence and his own testimony, Appellant committed provocative acts that constituted a basis for Rodriguez as the householder and Victim as her guest to reasonably believe that Appellant intended to commit a violent felony upon one or more of the dwellers in the habitation. *See Bailey*, 1921-NMSC-009, ¶ 30. These acts include his threatening text of which both Rodriguez and Victim were aware, knocking or pounding on the front door after 1:00 a.m., yelling in argument with Rodriguez even after being told to leave and that the police had been called, knocking on the master bedroom window, and forcibly breaking and reaching through the living room window. Relevantly, this Court has "determine[d] that putting one's fingers behind a window screen affixed to a residential dwelling is an intrusion into an enclosed, private, prohibited space and constitutes an 'entry' for the purposes of New Mexico's breaking-and-entering statute." *State v. Holt*, 2016-NMSC-011, ¶ 18, 368 P.3d 409 (citing NMSA 1978, § 30-14-8(A) (1981)). Appellant's own testimony established that he "entered" the home, which further supports the reasonableness of a belief by Rodriguez or Victim that Appellant intended to commit a violent felony upon one or both of them.

**{26}** Under these circumstances, Rodriguez and Victim were legally justified in their conduct that Appellant alleges. Because their actions were lawful, Appellant's responsive use of force in firing a gunshot into the residence cannot constitute an objectively reasonable act of self-defense. Consequently, evidence was not presented to satisfy the objective element of self-defense, and the district court properly denied the self-defense jury instruction. *See State v. Gaines*, 2001-NMSC-036, ¶ 5, 131 N.M. 347, 36 P.3d 438 ("[W]hile an accused is entitled to instruction on [the accused's] theory of the case if evidence exists to support it, the court need not instruct if there is absence of such evidence." (emphasis, internal quotation marks, and citation omitted)).

**{27}** We recognize that the defense-of-habitation doctrine was not raised below. However, under the "right-for-any-reason" doctrine, the district court was nonetheless correct to deny the instruction despite not weighing the defense-of-habitation doctrine in its determination. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the [right-for-any-reason] doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). Affirming the district court's decision on defense-of-habitation grounds does not require us to look beyond the factual allegations considered by the district court when it considered the self-defense jury instruction and

whether Appellant was the first aggressor. Therefore, it is not unfair to Appellant to apply the right-for-any-reason doctrine here. *See State v. Gomez*, 2003-NMSC-012, ¶ 7, 133 N.M. 763, 70 P.3d 753 ("While a decision of the trial court will be upheld if it is right for any reason, we will not rely on this doctrine if doing so would be unfair to the appellant." (text only) (citations omitted)).

**{28}**     Because we conclude that Appellant was not entitled to a self-defense instruction based on the defense-of-habitation doctrine, we do not consider the parties' arguments concerning Appellant's status as first aggressor.

### D.     Appellant's Other Arguments Are Without Merit

**{29}**     Appellant also argues that his earlier altercation with Victim at Allsup's supports a finding of reasonableness of Appellant's fear of Victim by a properly instructed jury, "since [Victim] had recently demonstrated he was willing to use force." Appellant cites *State v. Branchal*, 1984-NMCA-063, ¶ 24, 101 N.M. 498, 684 P.2d 1163, for the proposition that courts may consider, in addition to events at the time of the incident, "history between a defendant and the victim which raises a reasonable doubt about whether a victim's actions placed a defendant in fear of imminent great bodily harm at the time of the alleged self-defense." However, Appellant overstates the similarity between this case and *Branchal* in which an extensive history of violent and threatening conduct by the victim "was sufficient to raise an issue of fact with respect to the elements of a self-defense claim." *Id.* ¶¶ 22, 24. Here, in contrast, the record reflects a mutual altercation between Appellant and Victim that resulted in a single punch—a very different degree of contextual history that is not sufficient to transform Appellant's later use of deadly force into objectively reasonable conduct.

**{30}**     Appellant also argues, quoting *State v. Coffin*, 1999-NMSC-038, ¶ 12, 128 N.M. 192, 991 P.2d 477, that "'[a] person may act in self-defense against multiple attackers acting in concert . . . to the extent that each accomplice poses an immediate danger of death or great bodily harm.'" In *Coffin*, the defendant asserted a theory of self-defense that both alleged assailants in a liquor store parking lot "posed an immediate threat of death or great bodily harm, that he feared death or great bodily harm and shot them as a result, and that he acted as a reasonable person would have acted in the same circumstances." *Id.* ¶ 13. However, we conclude that *Coffin* is inapposite, as the issue here is whether a reasonable person would act as Appellant did in the same circumstances, regardless of whether that conduct responded to a single threat or "alleged concerted action." *See id.* Lawful conduct by Rodriguez or Victim is not transformed into illegal use of force by virtue of their acting together. Accordingly, this argument fails.

## III.     CONCLUSION

**{31}**     For the foregoing reasons, we affirm the judgment of the district court.

**{32}   IT IS SO ORDERED.**

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**