VILLANTI, Judge.
S.J.C. challenges an order withholding adjudication after the trial court found him guilty of committing a battery on his mother. He argues he was entitled to assert self-defense to his mother’s corporal punishment and that the State failed to overcome this defense beyond a reasonable doubt. We reverse.
Fifteen-year-old S.J.C. provoked his mother’s ire, according to her testimony, when she arrived home to discover he had skipped school to go fishing and had written profanity on his sister’s makeup case. She approached S.J.C., who was sitting in a recliner, intending to “pop” him with a board she had grabbed from the corner of the room. The undisputed testimony about this board was that it had little nails sticking out of it. S.J.C. saw the nails sticking out of the board as it was coming toward him, and his mother admitted she, too, saw the nails but only in mid-swing. S.J.C. deflected the strike by pushing the board back against his mother, causing her to stumble on a footstool. S.J.C. was charged with battery, and the trial court found him guilty but withheld adjudication.
S.J.C. argues he was entitled to a judgment of dismissal because the undisputed facts established he was acting in self-defense. We agree. “The [S]tate has the burden of proving guilt beyond a reasonable doubt, which includes proving beyond a reasonable doubt that the defendant did not act in self-defense.” Hernandez Ramos v. State, 496 So.2d 837, 838 (Fla. 2d DCA 1986). Normally, self-defense is a defense to battery. Notwith *1116 standing this defense, the State argues S.J.C. was not entitled to use self-defense against his mother because she was using corporal punishment against him. The State derives its argument from the language of the self-defense statute:
A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against such other’s imminent use of unlawful force.
§ 776.012, Fla. Stat. (2003) (emphasis added). The State reads this statute in conjunction with case law and dependency statutes acknowledging that corporal punishment by parents is lawful unless it crosses the line to abuse. § 39.01(2), Fla. Stat. (2003); Raford v. State, 828 So.2d 1012 (Fla.2002). It combines these two propositions to conclude that because a person may protect himself against only unlawful force, and corporal punishment is not unlawful, S.J.C. was not permitted to defend himself against his mother’s corporal punishment.
The State’s argument turns on the premise that S.J.C.’s mother’s act was not unlawful, and it bases this premise of the mother’s lawfulness on her engagement in corporal punishment. Under the State’s theory, SJ.C.’s mother’s use of corporal punishment was lawful because it was not abuse, and it was not abuse because S.J.C. was not harmed; therefore, S.J.C. cannot assert self-defense because the force his mother used against him was lawful. See § 39.01(2) (“Corporal discipline of a child by a parent or legal custodian for disciplinary purposes does not in itself constitute abuse when it does not result in harm to the child.”). Paradoxically, what prevented the harm from happening was S.J.C.’s use of self-defense. The result in accepting the State’s position is a catch-22: S.J.C. could not assert self-defense because he was not harmed; but if he had allowed his mother to strike him with the board with nails in it, then he would have been harmed, and he could have defended himself.
Undergirding the State’s position is a basic assumption that S.J.C.’s mother’s act was not abuse. It is true that the trial court, in admonishing the mother about using care in her future disciplinary methods, did not state that the mother was abusing S.J.C. when it noted, “[A]s to you, you are not before me for any violations of law. I’m not saying that any laws have been violated with respect to any of your conduct.” We do not consider this comment to be an indication that the trial court decided one way or the other whether the mother’s act was abuse for the same reason the trial court stated: because the mother was not on trial. We are likewise unpersuaded that the lack of resulting harm to S.J.C. necessarily equals a lack of abuse. Although section 39.01(2) specifically states that corporal punishment that does not result in harm is excluded from the definition of abuse, it should be noted that this exclusion is within the context of dependency and termination of parental rights.[1] In contrast, the definition of child *1117 abuse for criminal purposes is found in section 827.03, Florida Statutes (2003), and it includes “[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child.” § 827.03(l)(b). Under this definition of child abuse, “corporal punishment” that could reasonably be expected to injure a child is criminally punishable abuse, even if the act is not completed to bring about the expected injury.
Our discussion of this definition of abuse is intended not to suggest that S.J.C.’s mother ought to be criminally prosecuted but rather to show how a parent, intending to use “corporal punishment,” nevertheless may cause a child to reasonably expect to be injured sufficient to invoke that child’s right to use self-defense. Whatever the intent of S.J.C.’s mother, the question is whether S.J.C. defended himself to the extent he reasonably believed was necessary to protect himself from his mother’s imminent, unlawful force. If her act of raising a board with nails in it to strike him could reasonably be expected to result in injury — and we conclude it could — it was an unlawful[2] act and S.J.C. was entitled to use reasonable self-defense to protect himself from such imminent force.
S.J.C. testified without rebuttal that he was afraid when he saw the board with nails sticking out coming at him. It is undisputed that his mother intended to “pop” him with this board. It is likewise undisputed that the board had nails in it and that S.J.C. saw the nails in the board. S.J.C. therefore reasonably feared that this unlawful force was imminent, and he used nondeadly force to defend himself. Accordingly, we conclude the State failed to prove beyond a reasonable doubt that S.J.C. did not act in self-defense, and the trial court should have granted S.J.C.’s motion for judgment of dismissal. We therefore reverse with directions that S.J.C.’s withhold of adjudication be vacated.
Reversed.
NORTHCUTT and KELLY, JJ., Concur.

. We are mindful of the supreme court’s reading of chapter 39 in para materia with section 827.03, Florida Statutes (2003), to define "mental injury.” DuFresne v. State, 826 So.2d 272 (Fla.2002). We disagree with the State, however, that the supreme court's reading of these two statutes in para materia creates a blanket proposition that these two statutes should always be read together. First, DuFresne involved a vagueness challenge to the criminal statute because of the lack of definition of "mental injury”; the supreme court gleaned meaning from the chapter 39 definition to reject the challenge to the criminal statute’s constitutionality. Second, in reading these two statutes in para materia, the supreme court noted that "these statutes have essentially the same underlying purpose, i.e., the protection of children." Id. at 278 *1117 (emphasis added). If we were to read the statutes the way the State would have us read them, the result would be a diminishment in the protection of children in that children would have to wait to be abused before they could protect themselves from their parents.

. The State argues that our recent opinion in King v. State, 903 So.2d 954 (Fla. 2d DCA 2005), requires "something more” than "significant welts or bruises” to constitute felony child abuse and that therefore, because she did not inflict these significant welts and bruises, the mother’s actions were lawful corporal punishment. This argument skips a step in logic. King held that the infliction of "significant welts or bruises” was not felony child abuse but nevertheless acknowledged that this type of "corporal punishment” could be the misdemeanor act of contributing to the dependency of a minor. Therefore, under King, such punishment would still be unlawful, which is the relevant inquiry here.