2008-NMCA-118

192 P.3d 260

**STATE of New Mexico, Petitioner–Appellee,**

v.

**DENZEL B., Child–Appellant.**

No. 27,684.

Court of Appeals of New Mexico.

May 7, 2008.

Certiorari Denied, No. 31,178, July 30, 2008.

Gary K. King, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, J.K. Theodosia Johnson, Assistant Appellate Defender, Santa Fe, NM, for, Appellant.

## OPINION

CASTILLO, Judge.

{1} A jury found Denzel B. (Child) to be delinquent for committing an act of battery against a household member, contrary to NMSA 1978, § 30–3–15 (2007). Child appeals the trial court's denial of a jury instruction for self-defense. We hold that the trial court properly denied the jury instruction, and we therefore affirm.

## I. BACKGROUND

{2} Terry Johnson (Uncle) is the legal guardian of Child. Uncle and Child had an understanding that Child's curfew was 10:00 p.m. on weeknights and midnight on weekends. On September 2, 2006, Child stayed out past his curfew and did not arrive home until approximately 9:00 a.m. the next morning. During the night, Uncle searched for Child and located him at a party. Not wanting to cause a scene, Uncle went home to wait up for Child. In the morning, Uncle confronted Child and put him on restriction, which meant that Child was only permitted to go to school and to study. Uncle testified that he was "really mad" and that he yelled at Child. Uncle further testified that Child was "just disrespecting me and everything of this nature.... [I]t was like nonchalant, you know ...; so-so at that moment, I just took my belt off, and I started spanking him."

{3} After the spanking, Uncle told Child to go to his room. Child complied, and Uncle followed; specifically, Uncle testified, "[W]e went in his room." The argument continued in the bedroom, and Uncle and Child got into "a rassling match." Child raised his fist, as if to punch Uncle, but Child changed his mind and tried to leave the room. Child pushed Uncle aside on the way out of the room. Uncle grabbed Child by the arm and pulled at his shirt. The shirt came off of Child, and he continued out the door. Uncle told Child that if he left the house, Uncle would call the police. Child left the house, and Uncle called the police.

{4} The State petitioned the trial court to find Child to be delinquent on two counts: (1) battery against a household member, based on Child's pushing Uncle out of the way, and (2) assault against a household member, contrary to NMSA 1978, § 30–3–12(A)(2) (1995). At trial, Child requested that the trial court give the jury the following instruction on self-defense:

Evidence has been presented that [Child] acted in self-defense.

[Child] acted in self-defense if:

1. There was an appearance of immediate danger of bodily harm to [Child] as a result of [Uncle's] disciplining [Child] with a belt; and

2. [Child] was in fact put in fear of immediate bodily harm and [Child] shoved [Uncle] because of that fear; and

3. [Child] used an amount of force that [Child] believed was reasonable and necessary to prevent the bodily harm; and

4. The apparent danger would have caused a reasonable person in the same circumstances to act as [Child] did.

The burden is on the [S]tate to prove beyond a reasonable doubt that [Child] did not act in self-defense. If you have a reasonable doubt as to whether [Child] acted in self-defense, you must find [Child] not guilty.

This instruction was based on a uniform jury instruction, UJI 14–5181 NMRA. The trial court denied the motion. The jury determined that Child committed the delinquent act of battery on a household member but

not assault on a household member. The trial court sentenced Child to two years of probation with the proviso that if Child successfully completed the first year, he would be released from the second year of probation. Child appeals the denial of the proffered jury instruction on self-defense and asks this Court to remand for a new trial.

## II. DISCUSSION

{5} Whether the trial court properly denied a jury instruction is a mixed question of law and fact, which we review de novo. *State v. Gaines*, 2001–NMSC–036, ¶ 4, 131 N.M. 347, 36 P.3d 438. Child argues that the evidence presented at trial supported every element of self-defense and that the trial court was therefore required to give the instruction. Specifically, Child contends that "[U]ncle's testimony, that he hit [Child] repeatedly with a belt, is all the 'slight evidence' [that is] required for the self-defense instruction." The State responds in two ways. First, the State contends that Uncle's act of hitting Child with a belt does not establish the elements of self-defense. Second, the State argues that a self-defense instruction was not warranted because Child's proffered instruction did not tender a legally correct statement of the law.

### A. Elements of Self-defense

{6} "In order for [the] defendant to be entitled to a self-defense instruction, there must be evidence that [the] defendant was put in fear by an apparent danger of immediate bodily harm, that his [actions] resulted from that fear, and that [the] defendant acted as a reasonable person would act under those circumstances." *State v. Lara*, 109 N.M. 294, 297, 784 P.2d 1037, 1040 (Ct.App. 1989). Child was required to present evidence supporting every element of self-defense in order to warrant a jury instruction on this issue. *State v. Gonzales*, 2007–NMSC–059, ¶ 19, 143 N.M. 25, 172 P.3d 162. "Whenever there is evidence, however slight, that the defendant acted in self-defense, the instruction should be given. Nevertheless, a defendant is not entitled to the instruction when the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant ... did

act in self-defense." *State v. Sutphin*, 2007–NMSC–045, ¶ 22, 142 N.M. 191, 164 P.3d 72 (alteration in original) (internal quotation marks and citations omitted).

{7} Child argues that the events on the morning of September 3 were a single continuous incident and that Uncle's disciplinary action with the belt therefore affected Child's later actions in the bedroom. Specifically, Child contends that the altercation "began with [Child's] being hit repeatedly with a belt and continued with the wrestling match as [Child] attempted to leave. . . . The physical fight only ended when [Child] pushed past [U]ncle and fled from the house." The record is not clear about many of the details of the scuffle between Uncle and Child. Nonetheless, we acknowledge that sufficient facts were presented from which a jury could infer that Uncle's striking Child with the belt only a short time before Uncle followed Child to the bedroom could have caused Child to believe that the discipline would continue and that he was in danger of imminent bodily harm. *See State v. Ungarten*, 115 N.M. 607, 610–11, 856 P.2d 569, 572–73 (Ct.App.1993) (stating that a defendant was entitled to a self-defense jury instruction when after being struck with a log, the defendant brandished a knife).

{8} Our Supreme Court has stated that "[t]he evidence of an appearance of immediate danger would support an inference that [the d]efendant was put in fear." *State v. Lopez*, 2000–NMSC–003, ¶ 25, 128 N.M. 410, 993 P.2d 727. After analyzing the jury instruction at issue, UJI 14–5171 NMRA, however, *Lopez* continued and explained that additional evidence was required to show that the defendant's actions were a result of the fear. *Lopez*, 2000–NMSC–003, ¶ 25, 128 N.M. 410, 993 P.2d 727; *see also* UJI 14–5181 (requiring that a defendant acted "because of ... fear"). In the present case, Child's perception of immediate danger supports an inference that Child was put in fear, but more evidence is required to establish that Child shoved Uncle because of the fear. After carefully reviewing the scant evidence regarding the incident, we determine that a jury could conclude that Child's attempt to escape from the bedroom was caused by the

fear resulting from Uncle's actions. A jury could infer that Child wrestled with Uncle in order to get away from him and that Child was simply trying to escape from the physical encounter when he pushed Uncle aside. "[R]esolution of the issue of whether [the d]efendant's acts ... were justified in defending himself presents a factual issue to be determined by the jury." *Ungarten*, 115 N.M. at 611, 856 P.2d at 573.

{9} Finally, we consider the evidence of the reasonableness of Child's acts under the circumstances. Child shoved Uncle out of the way and left the room. The facts would allow a jury to determine that Child acted reasonably in order to escape bodily injury. Accordingly, we conclude that Child presented enough evidence on the elements necessary to support a jury instruction on self-defense. Our analysis does not end here, however; we now address the State's issue regarding parental privilege.

## B. Parental Privilege

■ {10} This Court recently held that "in New Mexico, a parent has a privilege to use moderate or reasonable physical force, without criminal liability, when engaged in the discipline of his or her child." *State v. Lefevre*, 2005–NMCA–101, ¶ 16, 138 N.M. 174, 117 P.3d 980. Based on *Lefevre*, the State here maintains that the self-defense instruction was properly refused because "[i]t would be self-contradictory to say that a child has a right of self-defense against a parent's privileged use of force." We initially observe that the ability of a child to defend himself against parental discipline is a novel question, not often addressed by the courts. "Historically, violence within the family was just that-within the family. Because the law has [recognized] and continues today to recognize the privilege of a parent to inflict punishment upon a child, there was never a need for the common law to extend self-defense doctrine to the child who reacted against the privilege." Catherine S. Ryan, *Battered Children Who Kill: Developing an Appropriate Legal Response*, 10 Notre Dame J.L. Ethics & Pub. Pol'y 301, 306 (1996) (footnote omitted). For this reason, there is little authority directly on point, and we look to cases with facts analogous to those in the present case.

{11} Child acknowledges that Uncle enjoyed parental privilege to discipline, but Child argues that this privilege does not extinguish a child's ability to defend himself when the discipline is unreasonable. Child cites *S.J.C. v. State*, 906 So.2d 1115 (Fla.Dist. Ct.App.2005), a case from the District Court of Appeal of Florida, which also considered a self-defense instruction tendered by a child. In *S.J.C.*, a mother attempted to discipline her child by striking him with a board that had nails protruding from it. *Id.* at 1115. The Florida court first determined that although the mother wasn't charged with abuse, the force that she used could be considered unlawful. *Id.* at 1116–17. Then, the court concluded that the child "was entitled to use reasonable self-defense to protect himself from such imminent force." *Id.* at 1117.

■ {12} In New Mexico, the lawfulness of a victim's conduct is also relevant to the availability of a self-defense instruction for a defendant. *See Lara*, 109 N.M. at 297–98, 784 P.2d at 1040–41. In *Lara*, a defendant pulled a knife on two store clerks after they chased the defendant to recover items that were stolen from the store. *Id.* at 296–97, 784 P.2d at 1039–40. The defendant tendered a self-defense instruction, and this Court stated that a juror "could infer that [the] defendant reasonably believed that [the clerks] were intending to seize him." *Id.* at 297, 784 P.2d at 1040. However, this Court determined that no reasonable juror could have viewed the clerks' actions as unlawful and that the self-defense instruction was therefore not supported by the evidence. *Id.* at 297–98, 784 P.2d at 1040–41. The case *State v. Southworth*, 2002–NMCA–091, 132 N.M. 615, 52 P.3d 987, also provides guidance. In *Southworth*, the defendant came onto the victim's property and frightened her. *Id.* ¶¶ 3, 4. The victim threatened the defendant with a shotgun, and the defendant attacked the victim. *Id.* ¶ 4. *Southworth* held that two jury instructions were required: the jury had to decide whether the victim's actions were justifiable, and if the actions were not justified, the jury could then consider

whether the defendant acted in self-defense. *Id.* ¶ 15.

{13} For further support, Child points to cases involving excessive use of force by police officers. We believe that these cases provide direction by analogy. The availability of self-defense in this context has been explained in the following manner:

> In order to trigger a defensive force defense[,] the aggressor must *unjustifiably* threaten harm to the defendant. Thus[,] when a police officer uses justified force to effect an arrest, the arrestee has no right of self-defense and others may not lawfully use defensive force on his behalf.... On the other hand, where the victim, or the police officer ..., uses unnecessary or disproportionate force, the initial aggressor gains a right to use defensive force because the threat against him is now unjustified, and the required triggering condition has been effected.

2 Paul H. Robinson, *Criminal Law Defenses* § 131(b)(2), at 74–75 (1984) (footnotes omitted).

{14} In *State v. Hill,* 2001–NMCA–094, ¶¶ 3–4, 131 N.M. 195, 34 P.3d 139, a police officer and the driver of a vehicle presented conflicting testimony regarding the relevant events. The driver claimed that the police officer used physical force without provocation, *id.* ¶ 3, and the officer testified that his actions were in response to the driver's attempts to flee the scene. *Id.* ¶ 4. This Court determined that if the jury believed the driver, "it would be reasonable for them to conclude that he acted in self-defense." *Id.* ¶ 10. However, the driver was not entitled to unlimited self-defense because "[o]ne does not have the right to self-defense when the officer is using necessary force to effect an arrest." *Id.* ¶ 6 (internal quotation marks and citation omitted).

{15} *State v. Hernandez,* 2004–NMCA–045, 135 N.M. 416, 89 P.3d 88, is also instructive. Again, in *Hernandez,* the officer and the defendant disagreed about who the aggressor was in the incident. *Id.* ¶ 3. When considering whether the trial court improperly formulated a self-defense jury instruction, this Court recognized that "self-defense against a peace officer is sharply limited

because officers are permitted to use necessary force to effect an arrest." *Id.* ¶ 11. The *Hernandez* Court observed that the committee commentary on UJI 14–5181 directed that "when the victim of the assault is a peace officer, the ordinary self-defense instruction must be modified" to conform to *State v. Kraul,* 90 N.M. 314, 318–19, 563 P.2d 108, 112–13 (Ct.App.1977) (holding that a person has no right to defend himself from a police officer if the officer used necessary force to effect an arrest). *Hernandez,* 2004–NMCA–045, ¶ 11, 135 N.M. 416, 89 P.3d 88; *see also* UJI 14–5181 Comm. commentary.

{16} We consider parents to be more comparable to police officers than to the average victim of assault for the purposes of the availability of a self-defense instruction. Both police officers and parents are permitted to use the force reasonably necessary to achieve a state-sanctioned goal: effecting a lawful arrest or accomplishing the betterment and welfare of a child. It is thus logical that a child's ability to justify battery on a parent would be limited by the reasonableness of the parent's initial actions, just as a person's ability to use force to defend against a physical altercation with a police officer is limited by the reasonableness of the police officer's actions. In either case, if the initial physical touching was reasonable or necessary, self-defense is not an appropriate justification for an aggressor's actions.

{17} Whether an officer reasonably resorted to force under the circumstances is a question of fact for the jury to determine. *See Hill,* 2001–NMCA–094, ¶ 10, 131 N.M. 195, 34 P.3d 139 ("Unless reasonable minds could not differ, the question of whether [the d]efendant was the instigator or the victim should be left to the jury."). Similarly, whether a parent used reasonable force to control a child's behavior and correct misbehavior "for the betterment and welfare of the child," *Lefevre,* 2005–NMCA–101, ¶ 16, 138 N.M. 174, 117 P.3d 980, is a question for the jury to decide. We therefore hold that when a child asserts self-defense as justification for battery against his parent, the jury must first determine whether the parent's use of physical discipline was reasonable under the circumstances. *See id.* ¶¶ 16–21 (explaining

what parental discipline might be reasonable).

{18} The State points out that Child did not request a jury instruction regarding the reasonableness of Uncle's behavior. In order to preserve an error regarding the trial court's failure to give a jury instruction, Child was required to tender a legally correct statement of the law. *See State v. Jernigan*, 2006–NMSC–003, ¶ 10, 139 N.M. 1, 127 P.3d 537. The State argues that because Child's proffered instruction did not limit Child's right to self-defense, the issue is not preserved for our review. We agree. In *Kraul*, this Court described a similar error by the defendant:

> Although [the] defendant was entitled to an instruction on his limited right to self-defense, refusal of the requested instruction was not error. The requested instruction did not limit [the] defendant's right of self-defense to situations where the officer used excessive force; the requested instruction would have given [the] defendant an unlimited right of self-defense.
>
> The requested instruction was properly refused because it was an incorrect statement of the law.

90 N.M. at 319, 563 P.2d at 113.

{19} Child did not argue that the self-defense instruction should be modified to account for the parental privilege. *See Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992) ("The party requesting the modification can preserve error by alerting the mind of the court to any vice claimed to be present in the uniform jury instruction."); *cf. Hill*, 2001–NMCA–094, ¶ 7, 131 N.M. 195, 34 P.3d 139 (holding that an argument in support of a modified instruction sufficiently alerted the trial court to the need for a modified instruction). On the contrary, when Child tendered the general self-defense instruction, he argued that when the fight relocated to the bedroom, the relationship between Child and Uncle changed such that it was no longer a parent-child relationship. Child never claimed that his self-defense claim should have been limited by a jury determination regarding the reasonableness of Uncle's actions. Instead, Child insisted that he was entitled to the general self-

defense instruction. Child's requested instruction would have given him an unlimited right to self-defense and was thus not a correct statement of the law. A review of the trial court's ruling shows that the court understood that Child's proffered instruction was improper because the instruction was too broad:

> The reason for my reluctance is the fact that it appears to the court appropriate for a ... parent or someone acting in loco parentis to continue application of, ... not force, but ... exertion of influence over a child, whether it be physically or otherwise. Therefore, the court's going to deny [the instruction].

Accordingly, we conclude that the trial court properly denied Child's self-defense instruction because it was an incorrect statement of the law.

## III. CONCLUSION

{20} We affirm the trial court.

{21} **IT IS SO ORDERED.**

I CONCUR: CYNTHIA A. FRY, Judge.

IRA ROBINSON, Judge (dissenting).

ROBINSON, Judge (dissenting).

{22} I have come to question the development of this case. The prosecution in a district court followed by the necessity of an appeal to this Court seems a waste of the resources of the criminal or juvenile justice system. It never should have gone as far as a district court jury trial. But, since it did, the district court should have given Child's requested jury instruction on self-defense. I do not concur in the majority opinion's affirmance. I would reverse.

{23} I agree that Uncle had a right to discipline Child. But, I seriously question the reasonableness, let alone the wisdom, of hitting or beating a young person the age of sixteen with a belt. It was wrong for the prosecuting attorney or the court to adopt Uncle's characterization of his act as "spanking." Child's defense attorney stated it best when he explained that "if they're going to be subjected to some sort of corporal punishment, if they're going to certainly be assault-

ed or have some sort of battery occur, then the potentiality for self-defense arises." He elaborated further:

> [I]f you're going to get into a wrestling match, is at some point there is going to be a violation of your [bodily] integrity. And at that point, for the wrestling match, before it began, my client must, at some point, believed that he was going to be approached physically for there to be a wrestling match. And at that point, when he believed that he was about to engage in a physical altercation, as demonstrated by the state's witness's testimony, I believe he had the right, or the belief that he had a right, to defend himself at that point. And so, he engaged in this wrestling match with the belief that he had the right, the reasonable right, to defend himself. And that is why I think it is proper that the jury to get this instruction on self-defense.

{24} The district court's reason for denial of the requested self-defense instruction is equally enlightening. The court stated:

> [T]he reason for my reluctance, is the fact that it appears to the court appropriate for a parent or someone acting in loco parentis to continue application of, not force but, exertion of influence over a child, whether it be physically or otherwise, and therefore the court's going to deny seven [requested self-defense instructions].

The trial judge incorrectly calls Uncle's beating of Child "not force but, exertion of influence over a child." That characterization is simply not correct. It was not "influence"; it was "force," and Uncle's use of force was neither moderate nor reasonable.

{25} I am not saying that a parent, or one in *loco parentis*, cannot discipline his or her child, even with force, as long as it is reasonable. But, this was not discipline; it was punishment. And punishing a sixteen-year-old boy by beating him with a belt is not a reasonable use of force. In *Lefevre*, our Court has given Child a right to self-defense against an excessive use of force. *See* 2005–NMCA–101, ¶ 16, 138 N.M. 174, 117 P.3d 980. Even though Child is not accused of battery for any of his actions downstairs, if Uncle's force was excessive or abusive, Child had a right to self-defense, even though he

did not exercise it. His right to self-defense is carried over much more clearly when Uncle follows Child upstairs and starts a new fight. The restrained manner in which Child exercises his right to self-defense by just trying to get out of there earns him a right to a self-defense instruction under *Lefevre*. But, assuming arguendo, that it is reasonable, the beating should have ended downstairs when Uncle finished his corporal punishment.

{26} The end of Uncle's beating downstairs was an important factual juncture in the events of that morning. After the beating, Uncle told Child to go upstairs, and he complied. That should have been the end of it. But, Uncle followed him upstairs and started up the fracas by getting into a wrestling match with Child, even though Child had complied with Uncle's order to go upstairs to his room. By an objective standard, a reasonable judge or jury could have found that Uncle was well past any possible reasonableness in his punishment and that his use of excessive force had reached the point of being cruel and abusive. What Uncle has done is started a fight in Child's room. The State erroneously characterized Child's pushing past Uncle to get out of his own bedroom, after a further attack by Uncle, a battery or an assault upon a household member. The jury should have been able to consider self-defense, and the district court's denial of the requested instruction was error.

{27} The State acknowledged in its Answer Brief that *Lefevre* held:

> [I]n New Mexico, a parent has a privilege to use moderate or reasonable physical force, without criminal liability, when engaged in the discipline of his or her child. Discipline involves controlling behavior and correcting misbehavior for the betterment and welfare of the child. The physical force cannot be cruel or excessive if it is to be justified. The parent's conduct is to be measured under an objective standard.

2005–NMCA–101, ¶ 16, 138 N.M. 174, 117 P.3d 980.

{28} Even though Child may not have preserved the issues of a parent's use of

reasonable force versus excessive force or abuse, fundamental error can be raised sua sponte by the Court if it shocks the conscience of the Court. *State v. Barber*, 2004–NMSC–019, ¶ 8, 135 N.M. 621, 92 P.3d 633. I would hold that this is a matter of fundamental error.

{29} I would reverse and grant a new trial, giving the district attorney in Curry County, in his discretion, an opportunity to decline to re-prosecute.

{30} I, therefore, respectfully dissent.