This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                             **NO. 34,760**

**DANIELLE A. SMILEY,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Becca Salwin, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Chief Judge.**

**{1}** Defendant Danielle Smiley appeals from her convictions for kidnapping in the first degree, contrary to NMSA 1978, Section 30-4-1 (2003), and aggravated battery with great bodily harm, contrary to NMSA 1978, Section 30-3-5(C) (1969). Defendant argues that her kidnapping conviction must be reversed because the brief moving of Danielle Dixon (Victim) from one room to another was incidental to the commission of the aggravated battery. We agree with Defendant and vacate the kidnapping conviction. Defendant also alleges that the district court erred in: (1) denying Defendant's requested jury instructions on self-defense, (2) excluding certain statements as hearsay, and (3) that Defendant's trial counsel was ineffective for not requesting a necessity instruction. On these points, we disagree with Defendant and affirm her conviction for aggravated battery.

**BACKGROUND**

**{2}** Two witnesses testified about the events that took place on the evening of April 3, 2013: Defendant's cousin, Sylvia Bowman, and Defendant. Bowman testified that Victim lived with Samantha Slowman-Subia (Slowman) in Slowman's trailer. When Bowman first arrived at Slowman's trailer that evening, Bowman was outside talking with Slowman, Defendant, and another person. At some point, Defendant went into the trailer to confront Victim because she was upset about something that was said to her about Victim.

{3}     Consistent with Bowman's testimony, Defendant testified that she had a conversation with Slowman that disturbed her regarding Victim and Defendant's father. According to Defendant, Victim was "abusing [Defendant's] dad and taking his money and doing drugs inside the house with the kids inside the house and drinking." Defendant got upset and went into the trailer because she wanted to protect her father and the children from Victim. Defendant's father was sleeping at the time Defendant entered the trailer.

{4}     Upon entering the trailer, Defendant went to the back room where Victim was laying down. Defendant woke Victim up, and "pulled her to the living room . . . by the leg." While being pulled into the living room, Victim—who was "a lot smaller" and skinnier than Defendant—was kicking and resisting. Although Bowman testified that Victim kicked Defendant in the crotch when they were in the living room, she also said that Defendant attacked Victim and was the main aggressor. Defendant hit and kicked Victim multiple times while Victim was on the floor. Bowman testified that blood was coming from Victim's nose as a result of Defendant's punches. Bowman saw Defendant kick Victim in Victim's side two times. Eventually, Bowman intervened and stopped Defendant from continuing her attack on Victim.

{5}     Victim was seen at a hospital on April 3, 2013, and diagnosed with closed nasal bone fractures and closed fractures of multiple ribs, among other diagnoses. Due to increased pain, Victim was seen at another hospital on April 9, 2013, and was

3

discharged with instructions to follow up in two days. Victim returned to the hospital on April 18, 2013, and was diagnosed with pneumonia, deemed "critically ill," and transferred to a hospital with a higher level of care. Victim's condition continued to deteriorate, and she died on May 10, 2013. According to the autopsy report, the immediate cause of death was "[b]lunt force chest trauma."

{6}     Defendant was charged with second degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), kidnapping in the first degree, contrary to Section 30-4-1, and aggravated battery with great bodily harm, contrary to Section 30-3-5(C). Defendant was convicted of kidnapping and aggravated battery, but the jury was unable to reach a verdict on the second degree murder charge, and the district court declared a mistrial as to that charge. Defendant was sentenced to a total of twenty-three years of incarceration. This appeal followed.

**DISCUSSION**

**The Brief Movement of Victim Is Insufficient to Support a Kidnapping Conviction**

{7}     Defendant's first argument on appeal is that the kidnapping charge lacked sufficient evidence to support a conviction because the brief pulling of Victim out of bed and into the living room was entirely incidental to the crime of aggravated battery. We agree.

4

{8}     Kidnapping in New Mexico is defined, in relevant part, as the "unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death[ or] physical injury . . . on the victim." Section 30-4-1(A)(4). We review Defendant's kidnapping conviction "in the light most favorable to the verdict," considering whether the movement of Victim from the bed to the living room was sufficient, as a matter of law, to support Defendant's conviction for kidnapping. *See State v. Tapia*, 2015-NMCA-048, ¶ 29, 347 P.3d 738, *cert. denied*, 2015-NMCERT-004, 348 P.3d 695.

{9}     Defendant's argument relies on this Court's holding in *State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238, in which we held that the restraint of a victim that is merely incidental to an aggravated battery is not separately punishable as kidnapping. In that case, we first engaged in an examination of New Mexico's kidnapping statute and relevant kidnapping statutes of other jurisdictions and concluded that New Mexico adheres to the position adopted in a majority of states that "kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other felonies." *Id.* ¶¶ 28-32 (internal quotation marks and citation omitted). The *Trujillo* Court noted that courts following the majority have developed three tests for determining whether a restraint is "incidental" to other crimes. *See id.* ¶¶ 32, 39. "Under the first test, the court must determine whether the confinement, movement, or detention was merely incidental to the accompanying

5

felony or whether it was significant enough, in and of itself, to warrant independent prosecution." *Id.* ¶ 32 (internal quotation marks and citation omitted). Whereas, "the second test focuses on whether the detention or movement substantially increased the risk of harm over and above that necessarily present in the accompanying felony." *Id.* (internal quotation marks and citation omitted). Under the third test, "the restraint or movement [must] not be slight, inconsequential, and merely incidental to the other crime or be the kind inherent in the nature of the other crime." *Id.* (internal quotation marks and citation omitted). Further, under the third test, restraint or movement that does not have "significance independent of the other crime, in that it makes the other crime substantially easier to commit or substantially lessens the risk of detection[,]" is not incidental conduct. *Id.* (internal quotation marks and citation omitted). Thus, "the severe penalties for kidnapping are acceptable only when there is culpability for increased danger to the victim." *Id.* ¶ 38.

**{10}** *Trujillo* did not adopt a specific test for determining whether a defendant's conduct is incidental to another crime; instead, we said that the ultimate question is "whether the restraint or movement increases the culpability of the defendant over and above his culpability for the other crime." *Id.* Because the facts there established that the restraint occurred within the same time as the battery, in the same general location, and there was no indication that the defendant "intended any other purpose than to continue battering [the v]ictim[,]" we vacated the defendant's kidnapping conviction.

6

*Id.* ¶ 39. We nevertheless emphasized that whether certain conduct is incidental to the commission of another crime is a factual inquiry dependant on the totality of the circumstances and stated that more complicated factual situations are best resolved by a jury. *Id.* ¶ 42.

{11}    Subsequently, in *Tapia*, this Court held that movement that is incidental to commission of another crime likewise does not support a conviction for kidnapping. *See* 2015-NMCA-048, ¶¶ 33-36. Thus, in that case, "brief movements from one room to another, in furtherance of a[n] . . . assault, were incidental to those crimes and cannot support separate kidnapping convictions." *Id.* ¶ 35. In reaching our conclusion, we applied the analysis set forth in *Trujillo* and noted that movements from one room to another, in the same family residence, did not "subject [the victim] to a substantial increase in risk of harm above and beyond that inherent in [the accompanying crime]." *Id.* ¶¶ 34-35. Accordingly, we reversed the defendant's kidnapping convictions as a matter of law. *Id.* ¶ 36. Against this backdrop, we now turn to the factual circumstances of this case.

{12}    Here, trial testimony established that Defendant pulled Victim from a back room in the trailer where she was laying down and into the living room, where Defendant punched and kicked Victim. The bed that Victim was laying down in was about twenty-five feet from the living room where she was dragged. Considering the scope and nature of this movement, including the relatively short distance between the

7

rooms in the trailer, we conclude that Defendant's act of dragging Victim to the living room by her leg in order to batter her was incidental to the commission of the battery. *See id.* ¶ 34 ("[W]hen in the course of committing a crime, a defendant does no more than move the victim around inside the premises in which the victim is already found, the movement generally will not be determined to constitute kidnapping." (alteration, internal quotation marks, and citation omitted)). Furthermore, this brief movement did not substantially increase the risk of harm to Victim above and beyond that inherent in the battery. *See id.* ¶ 35. Nor was this movement of twenty-five feet within the confines of the trailer significant enough to justify a separate kidnapping prosecution, *see Trujillo*, 2012-NMCA-112, ¶¶ 32-35, because it did not increase Defendant's culpability beyond her culpability for the battery. *See id.* ¶ 38. In fact, the evidence in the record reflects that the movement of Victim to the living room was committed solely in furtherance of the battery because Defendant wanted to confront Victim outside the presence of the children who were in the back room where Victim was laying down. Importantly, we note as well that the movement to the living room did nothing to make the battery less detectable, given that others were present in the living room. Accordingly, in our consideration of the totality of the circumstances, we conclude that the brief movement of Victim from one room to another was incidental to, and in furtherance of, the battery and therefore cannot support an independent conviction for kidnapping as a matter of law. *See id.* ¶ 39.

8

**The District Court Did Not Err in Denying Defendant's Jury Instructions on Self-Defense**

{13} Defendant next argues that the district court erred in precluding her a complete defense because it did not allow her proffered jury instructions on self-defense. Defendant, therefore, asks us to remand this case for a new trial on the aggravated battery charge.

{14} "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Cooper*, 1999-NMCA-159, ¶ 7, 128 N.M. 428, 993 P.2d 745. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (alteration, internal quotation marks, and citation omitted). A defendant is entitled to a jury instruction on her theory of the case if there is evidence to support the instruction, and failure to give such an instruction is reversible error. *State v. Emmons*, 2007-NMCA-082, ¶ 7, 141 N.M. 875, 161 P.3d 920.

{15} "In order for the defendant to be entitled to a self-defense instruction, there must be evidence that the defendant was put in fear by an apparent danger of immediate bodily harm, that his [or her] actions resulted from that fear, and that the defendant acted as a reasonable person would act under those circumstances." *State v. Denzel B.*, 2008-NMCA-118, ¶ 6, 144 N.M. 746, 192 P.3d 260 (alterations, internal

quotation marks, and citation omitted). Thus, the analysis depends on a hybrid test that contains both subjective and objective elements. *See State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477 (explaining that the first two elements of the test are subjective and based on the defendant's perception and that the third element is objective because it is based on the "hypothetical behavior of a reasonable person acting under the same circumstances as the defendant"). Additionally, where the "evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant did act in self-defense[,]" the instruction should not be given. *State v. Sutphin*, 2007-NMSC-045, ¶ 22, 142 N.M. 191, 164 P.3d 72 (omission, internal quotation marks, and citation omitted).

{16} At trial, Defendant requested jury instructions on self-defense stating, in pertinent part, that

> [D]efendant acted in self-defense if:
>
> 1. There was an appearance of immediate danger of bodily harm to [D]efendant as a result of [Victim] kicking her in the groin; and
>
> 2. [D]efendant was in fact put in fear of immediate bodily harm and kicked and punched [Victim] because of that fear; and
>
> 3. [D]efendant used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and
>
> 4. The apparent danger would have caused a reasonable person in the same circumstance to act as [D]efendant did.

{17} The district court denied Defendant's jury instructions on self-defense. For the reasons that follow, we conclude that the district court did not err in denying Defendant's proffered instructions.

{18} The testimony at trial established that Victim was laying in a bed in a back room of the trailer with covers over her and the lights off when Defendant, who was outside the trailer, went in with the intent of initiating the confrontation. Bowman testified that Defendant was the main aggressor. Defendant weighed approximately 220 pounds at the time of the attack, whereas Victim weighed only about 115 pounds. There was no evidence that Victim was able to get on her feet at any time during the incident. Rather, Defendant pulled Victim from the bed by her leg and dragged her into the living room. In the living room, Defendant stood over Victim while Victim lay on the floor, and Defendant began kicking and hitting Victim. The only evidence in the record that suggests that Victim touched Defendant is when she resisted being pulled into the living room by her leg, and Bowman's statement that Victim kicked Defendant in the crotch during the attack. Defendant conceded that Victim did not threaten her before she physically dragged Victim to the living room.

{19} Reviewing these facts de novo, we conclude that the district court did not err in denying Defendant's jury instructions because, *inter alia*, Victim could not have posed any danger of immediate bodily harm to Defendant, when she was laying in the bed with covers over her and the lights off when Defendant initiated the confrontation.

11

Nor is there any evidence that Defendant was placed in any subjective fear of immediate bodily harm since she testified that Victim did not threaten her before she dragged Victim to the living room. *See Denzel B.*, 2008-NMCA-118, ¶ 6 (noting that "[i]n order for the defendant to be entitled to a self-defense instruction, there must be evidence that the defendant was put in fear by an apparent danger of immediate bodily harm, that his [or her] actions resulted from that fear, and that the defendant acted as a reasonable person would act under those circumstances." (alterations, internal quotation marks, and citation omitted). Similarly, there was no evidence that a reasonable person in Defendant's position would have acted as Defendant did under the same circumstances, *see id.*, given that Defendant initiated the confrontation, Victim had been laying down in a back room when the incident began, Defendant had a substantial weight advantage over Victim, and Victim was on the floor during the attack. In viewing Defendant's testimony in the light most favorable to giving the self-defense instruction, we hold that the district court did not err in refusing the instruction.

**Defendant's Remaining Arguments**

{20}     Defendant additionally alleges that the district court abused its discretion in excluding as hearsay certain statements regarding Defendant's state of mind.

12

Specifically, Defendant contends that the excluded "statements support [Defendant's] argument that her intent was to remove [Victim] rather than hold her to service, and that self-defense was reasonable." Because we have vacated Defendant's kidnapping conviction, Defendant's argument under a hold to service theory, pursuant to Section 30-4-1(A)(3), is moot.

{21}     Likewise, we will not address Defendant's argument regarding whether Defendant's "trial counsel was ineffective for failing to request a necessity instruction," given the facts discussed above regarding Defendant's proffered instructions on self-defense, which are also relevant to whether an instruction on necessity would have been appropriate. More importantly, we note that Defendant does not provide any argument or facts supporting her conclusory assertion that her trial counsel was ineffective for not seeking a necessity instruction. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments); *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be").

**CONCLUSION**

{22}     For the reasons set forth herein, we vacate Defendant's kidnapping conviction and affirm the district court on all other matters.

13

**{23}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**J. MILES HANISEE, Judge**