This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                                          **No. 34,457**

**STEVEN BANDA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRENCH, Judge.**

{1} There is no question that Defendant Steven Banda beat his house guest after an evening of smoking methamphetamine and consuming alcohol, leaving him "in awe" as to the force used. Defendant was charged with a single count of aggravated battery with a deadly weapon, based upon his use of nunchucks to inflict blows that resulted in his guest suffering a cracked skull and a five-inch laceration requiring fourteen staples. Defendant appeals from his resulting conviction of aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(C) (1969). At trial, Defendant unsuccessfully argued that he acted in self-defense. The district court instructed the jury on the elements of aggravated battery with a deadly weapon and on the use of deadly force in self-defense. Defendant seeks reversal, arguing the district court committed instructional error by refusing his requested instructions on (1) the use of non-deadly force in self-defense; and (2) the lesser included offense of aggravated battery, a misdemeanor. We hold that the district court properly denied both jury instructions, and we affirm.

**BACKGROUND**

{2} On June 28, 2013, Defendant and Ruben Madrid (Victim) spent the day smoking methamphetamine and consuming alcohol. According to Victim's testimony, by 1:30 a.m. the following morning, he and Defendant had finished smoking all of the methamphetamine Victim had purchased, and they had consumed approximately thirty

beers between them. Victim testified that Defendant went to Defendant's bedroom around 3:30 a.m., and Victim fell asleep on the couch. Victim said he awoke approximately two hours later as Defendant began striking him in the head. He said Defendant struck him in the head with nunchucks five times and once in the knee. Victim testified that he tried to get out of the house through the front door, but Defendant pulled him back into the room by his leg. Victim said he eventually escaped the attack. Medical personnel later advised Victim that he suffered a "cracked skull" and a five-inch laceration, requiring "fourteen staples to close his head wounds."

**{3}** Defendant told a different story at trial. Defendant testified that he had moved from his bedroom to a lawn chair in the living room and fell asleep. Defendant said he awoke when he felt Victim touching his pockets and crotch area and that he felt "violated" as Victim touched him. Defendant yelled at Victim, who jumped backward. Defendant said he then shoved Victim away from him and pushed Victim onto the couch, at which point he began hitting Victim with the nunchucks that he had with him "at that time." During his testimony, Defendant was unable to say how many times he struck Victim after pushing him onto the couch. Defendant said he struck Victim "several times" and "repeatedly."

**{4}** At the jury instruction conference, Defendant's counsel sought instruction on the use of deadly force in self-defense (UJI 14-5183 NMRA), the use of non-deadly force in self-defense (UJI 14-5181 NMRA), and the lesser included offense of misdemeanor aggravated battery (Section 30-3-5(B)). Ultimately, the district court instructed the jury on the elements of aggravated battery with a deadly weapon, a third degree felony (Section 30-3-5(C)), and on the use of deadly force in self-defense (UJI 14-5183). The jury convicted Defendant of aggravated battery with a deadly weapon. On appeal, Defendant argues the district court erred by refusing to instruct the jury on non-deadly force self-defense and on the lesser included misdemeanor offense.

## DISCUSSION

**{5}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Guerra*, 2012-NMSC-014, ¶ 13, 278 P.3d 1031 (internal quotation marks and citation omitted). "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instructions." *State v. Contreras*, 2007-NMCA-119, ¶ 8, 142 N.M. 518, 167 P.3d 966 (alteration, internal quotation marks, and citation omitted). We apply this standard of review to both of Defendant's arguments, which we address in turn.

### Self-Defense Instruction

**{6}** "[A] defendant is entitled to have his or her theory of the case submitted to the jury under proper instructions where the evidence supports it." *State v. Lucero*, 1998-NMSC-044, ¶ 5, 126 N.M. 552, 972 P.2d 1143 (alteration, internal quotation marks, and citation omitted). Specifically, a defendant is entitled to a self-defense instruction only when all of the elements of self-defense are justified by sufficient evidence; i.e., "when the evidence is sufficient to allow reasonable minds to differ as to [every] element[] of the defense." *Guerra*, 2012-NMSC-014, ¶ 13 (internal quotation marks and citation omitted). "Whenever there is evidence, however slight, that the defendant acted in self-defense, the instruction should be given. Nevertheless, a defendant is not entitled to the instruction when the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind on whether a defendant did act in self-defense." *State v. Sutphin*, 2007-NMSC-045, ¶ 22, 142 N.M. 191, 164 P.3d 72 (omission, internal quotation marks, and citations omitted). The elements of deadly force self-defense are:

> 1. There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim] touching [D]efendant's crotch and pocket area; and
>
> 2. [D]efendant was in fact put in fear of immediate death or great bodily harm and struck [Victim] because of that fear; and
>
> 3. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.

*See* UJI 14-5183. The elements of non-deadly force self-defense are:

1. There was an appearance of immediate danger of death or great bodily harm to [D]efendant as a result of [Victim] touching [D]efendant's genital area; and

2. [D]efendant was in fact put in fear of immediate death or great bodily harm and struck [Victim] because of that fear; and

3. [D]efendant used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm; and

4. The force used by [D]efendant ordinarily would not create a substantial risk of death or great bodily harm; and

5. The apparent danger would have caused a reasonable person in the same circumstances to act as [D]efendant did.

*See* UJI 14-5181. Defendant was required to present evidence supporting each of these elements. *See State v. Denzel B.*, 2008-NMCA-118, ¶ 6, 144 N.M. 746, 192 P.3d 260.

{7}     In responding to Defendant's argument that the non-deadly force instruction must have been given, the State focuses on the instruction's fourth element: "[t]he force used by [D]efendant ordinarily would not create a substantial risk of death or great bodily harm." The State argues that reasonable minds could not possibly differ on this element of the defense because no juror could find that repeatedly striking a person with nunchucks "ordinarily would *not* create a substantial risk of death or great bodily harm." (Emphasis added.) Rather, repeatedly striking a person with nunchucks *would* ordinarily create a substantial risk of harm. The State argues that the district

6

court properly concluded Defendant's use of nunchucks "takes us out of that area," (i.e., the non-deadly force instruction). Because evidence did not support every element of the non-deadly force instruction, the State argues that the district court did not err by refusing the instruction. We agree.

{8}     The critical difference, in this case, between the two self-defense instructions is the fourth element of the self-defense, non-deadly force instruction. *Compare* UJI 14-5183, *with* UJI 14-5181. To reiterate, the fourth element requires that "[t]he force used by [D]efendant ordinarily would not create a substantial risk of death or great bodily harm." UJI 14-5181. This element is "objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted). Our review of the record reveals the absence of any evidence sufficient to allow reasonable minds to differ as to this element of non-deadly force self-defense. Defendant's own testimony established that he beat Victim "several" times with the nunchucks and that he hit Victim "repeatedly." Defendant admitted that he hit Victim "over and over again," and that "there was blood around in the room." Defendant said he was "in awe" at what he had done to Victim, and that he had an "awful feeling" about how badly he had beaten

Victim. We conclude that consistent with the evidence before it, the district court did not err in denying Defendant's requested self-defense non-deadly force instruction.

{9}  Defendant separately argues that he was entitled to the self-defense non-deadly force instruction because it reflects his theory of self-defense at trial, which was that he reacted to Victim's unwanted advances by using nunchucks in a non-deadly manner out of an immediate fear of harm, given that Victim's intentions were unclear. Defendant argues he had a right to additionally have the jury instructed regarding the use of non-deadly force in self-defense (not only deadly force in self-defense) because it is the role of the jury, not the judge, to determine whether Defendant's actions constituted non-deadly force. The jury would then have been free to reject Defendant's theory of non-deadly force self-defense, as it did deadly force self-defense, but the district court's "outright rejection" of Defendant's non-deadly force self-defense instruction "denied him a fair trial and deprived him of his right to due process."

{10}  While we agree with Defendant that the jury, not the judge, answers the factual questions presented by the elements of the instruction, it is the judge, not the jury, who determines which instructions the jury receives. That decision is based on the trial evidence. *See Sutphin*, 2007-NMSC-045, ¶ 22. The issue is not whether Defendant was entitled to a self-defense instruction; it is whether the jury received *the proper*

self-defense instruction or whether Defendant was entitled to have the jury instructed on *both* types of self-defense, deadly and non-deadly force. Here, Defendant's use of nunchucks in the manner employed amounted to "deadly force" because it was a "violent action known to create a substantial risk of causing death or serious bodily harm." *State v. Cardenas*, 2016-NMCA-042, ¶ 19, 380 P.3d 866 (alteration, internal quotation marks, and citation omitted). During the jury instruction conference, Defendant argued that the force used was not of a deadly quality, but agreed that the nunchucks were a deadly weapon. Accordingly, the court reasoned that Defendant's use of the nunchucks "takes us out of that area." The district court further advised Defendant that the non-deadly force instruction would apply only if Defendant were not charged with great bodily harm. Once again, Defendant agreed. Ultimately, when struck with the nunchucks, Victim suffered a cracked skull and a five-inch laceration on the back of his head requiring fourteen staples. Given this, we conclude that Defendant employed deadly force with a deadly weapon and that Defendant did, in fact, cause great bodily harm to Victim. To provide a non-deadly force instruction would be to incorrectly apply the law as it relates to Defendant's actions on the night of the incident. *See State v. Baxendale*, 2016-NMCA-048, ¶ 13, 370 P.3d 813.

{11}     We hold the district court did not err by denying Defendant's requested non-deadly force instruction. *See State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184,

185 P.3d 355 ("Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction.").

**Lesser Included Offense**

{12}    Defendant argues the district court erred by refusing to instruct the jury on misdemeanor aggravated battery by focusing on Victim's injuries. Misdemeanor aggravated battery required showing that Defendant inflicted an injury that caused painful temporary disfigurement, whereas felony aggravated battery required showing that nunchucks were a deadly weapon as used by Defendant and that Defendant's use of the nunchucks could have caused death or great bodily harm. Defendant argues this distinction is a factual issue for the jury to resolve, and "the trial court invaded the province of the jury" by refusing to give both instructions. Defendant points to the purpose of lesser included offense instructions, arguing that jurors may believe Defendant should be punished, but without the lesser included offense instruction, are wrongly presented with an all-or-nothing choice between the conviction of the charged offense or acquittal. "There is a legitimate concern that conviction of the greater offense may result because acquittal is an alternative that is unacceptable to

the jury." *State v. Meadors*, 1995-NMSC-073, ¶ 47, 121 N.M. 38, 908 P.2d 731 (Ransom, J., specially concurring).

{13}     The State answers that a defendant is only entitled to an instruction on a lesser included offense if the evidence is "sufficient to sustain a conviction on the lesser offense[.]" *State v. Sotelo*, 2013-NMCA-028, ¶ 9, 296 P.3d 1232 (internal quotation marks and citation omitted). To receive a misdemeanor aggravated battery instruction, Defendant needed to present evidence that Victim's injuries were merely painful temporary disfigurements. Here, Victim's injuries amounted to more than painful temporary disfigurements—a cracked skull and a five-inch laceration in the head constitutes great bodily harm. The State also notes that Victim's scars remained more than one year after the incident, demonstrating their permanency.

{14}     Failing to instruct the jury on a lesser included offense is reversible error if: "(1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue." *State v. Neatherlin*, 2007-NMCA-035, ¶ 22, 141 N.M. 328, 154 P.3d 703 (internal quotation marks and citation omitted).

{15}   Defendant did not tender a written lesser included instruction to the district court. However, the parties debated instructing the jury on the lesser included offense at the jury instruction conference, and the district court concluded Defendant was not entitled to the misdemeanor aggravated battery instruction because Defendant used a deadly weapon and caused great bodily harm. Rule 5-608(D) NMRA requires a party to tender a written jury instruction in order to preserve error, but the rule is enforced flexibly as long as the district court was alerted to the defendant's argument. *See State v. Garcia*, 2014-NMCA-006, ¶ 46, 315 P.3d 331. Here, the discussion between the parties and the district court during the jury instruction conference suffices to preserve the issue for appellate review. *See id.* ¶ 47 (holding that the defendant properly preserved an issue by reciting the statutory elements of the instruction, though the defendant did not provide a written instruction).

{16}   Misdemeanor aggravated battery is a lesser included offense of aggravated battery with a deadly weapon under the facts of this case. A person commits aggravated battery by unlawfully touching or applying force to a person with intent to injure that person. Section 30-3-5(A). But aggravated battery is exclusively a misdemeanor only when a defendant inflicts "an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement." Section 30-3-5(B). Aggravated battery is a felony when a defendant

12

inflicts "great bodily harm or does so with a deadly weapon." Section 30-3-5(C). Here, it is true that Defendant could not have committed felony aggravated battery without also committing the lesser offense because of the extent of Victim's injuries and because nunchucks are a deadly weapon. *See Meadors*, 1995-NMSC-073, ¶ 7 (concluding that a lesser offense is necessarily included when under the facts alleged in the charging document and supported by the evidence, the defendant could not have committed the greater offense without also committing the lesser offense).

{17}     But that does not end our inquiry. In order to succeed on appeal, Defendant must point to evidence establishing that the lesser included offense was the highest degree of crime committed. *See Neatherlin*, 2007-NMCA-035, ¶ 22. No such evidence exists. Rather, the evidence established that Defendant inflicted great bodily harm with a deadly weapon, a level of harm well beyond painful temporary disfigurement. Indeed, Defendant stipulated that the nunchucks were a deadly weapon; that Defendant cracked Victim's skull by repeatedly hitting Victim; that the nunchucks left a five-inch laceration in Victim's head; that the laceration required fourteen staples to close; and that Victim's scars remained detectable more than one year after the incident. Neither Defendant nor Victim disputed these facts during their testimony at trial. Because the evidence shows Defendant inflicted great bodily harm, not merely temporary disfigurement, misdemeanor aggravated battery was not the highest degree

of crime committed. The district court did not err by refusing to instruct the jury on the lesser included offense.

**CONCLUSION**

{18}    For the foregoing reasons, we affirm Defendant's conviction.

{19}    **IT IS SO ORDERED.**


_____

**STEPHEN G. FRENCH, Judge**


**WE CONCUR:**


_____

**JONATHAN B. SUTIN, Judge**


_____

**M. MONICA ZAMORA, Judge**